JOHN G. KINKELE and WILLIAM P. GILES, Respondents, v. EMMA GILES WILSON, Appellant.

1. DEVISE SUBJECT TO CHARGE IN FAVOR OF DEVISEE.  A devise subject to a charge in favor of the devisee is such an unusual method of giving away property as to raise the question whether that was the actual intention.

2. CONSTRUCTION OF WRITINGS.  The natural sense in which words are used in a written instrument, as it appears from judicial inspection, always prevails over both punctuation and capitals.

3. PUNCTUATION — CAPITAL LETTERS.  When the punctuation of a writing accords with the sense, the use of a capital letter in the middle of a sentence must be regarded as accidental and should not be permitted to confuse a construction otherwise reasonably clear; and this is especially so in the case of a will written by another and read to the testator.

4. WILL CONSTRUED — DEVISE TO WIFE FREE FROM CHARGE OF ANNUITY IN HER FAVOR.  A will gave to the testator's wife, in lieu of dower, the income of all his property so long during her life as she should remain his widow and unmarried, but provided that if she remarried she should receive a part of the income only, as an annuity for life, and, by a residuary clause, gave all his estate to others, subject to the provision for his wife.  A codicil stated that, in addition to the provisions of the will for the benefit of his wife, the testator gave and bequeathed to her his personal property "absolutely, as and for her own property, and to be at her own disposal : And also I do give, devise and bequeath unto my said wife, in fee simple, all the one equal third part of my real estate * * *, and these gifts are to take effect whether or not she shall remarry after my death."  The codicil revoked the will as to certain of the residuary legatees, and gave all the residuary estate to the remaining original legatees thereof, "saving and excepting therefrom" the real and personal property therein given to his wife.  The wife survived the testator and remarried. *Held*, that the wife took the one-third of the real estate, as well as the personal property, absolutely and free from any implied charge for contribution to her annuity.

*Kinkele* v. *Wilson*, 9 Misc. Rep. 139, reversed.

(Argued December 15, 1896; decided January 19, 1897.)

APPEAL from a judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered June 19, 1894, which reversed a judgment in favor of defendant entered upon the report of a referee.

Henry C. Giles died April 27th, 1887, leaving a last will and a codicil thereto, which in due time and form were admitted to probate by the surrogate of the county of New York. By the first three paragraphs of his will, which was dated August 7th, 1885, he directed the payment of his debts and funeral expenses, revoked all other wills by him made and appointed his wife, Emma Giles, as executrix, but she did not qualify, and his friend George B. Patterson, as executor, who did qualify.

The remaining paragraph is as follows :

"*Fourth.* I do give, devise and bequeath unto my said wife, Emma, the rents and income of all my estate, property and effects remaining after the payment of my debts and my funeral and testamentary charges and expenses, so long during her natural life as she shall remain my widow and unmarried. But if my said wife shall at any time see fit to and do remarry, therefrom and after such remarriage, in lieu and instead of the use, rents and income of my entire estate, I do give and bequeath unto her the annual sum of two thousand dollars in each and every year during the residue of her natural life, to be paid to her in quarterly or semi-annual installments, as may be most practicable or convenient for my estate.

"And subject to this provision for my said wife, I do give, devise and bequeath my said estates unto my brother, William P. Giles, my nephew John G. Kinkele, my niece Anne Gilbert, now the wife of William E. Gilbert, and my niece Bella Giles, daughter of my brother John G. Giles, in equal shares ; provided, however, that if any of them shall have died before my death, leaving issue who shall survive me, the share of such deceased shall pass to and vest in the child, children or issue of any of them, my said brother, nephew or nieces, respectively. But if any of them shall die leaving no issue, such share of the decedent shall pass to and vest in the survivors of my said brother, nephew and nieces and the children or issue of any of them who shall have died leaving issue. Such issue, if any, taking the deceased parents' share amongst them in equal portions.

" The provisions herein made for my said wife Emma Giles are so made, and if accepted by her shall be deemed and taken to be, in lieu and bar of all dower and rights of dower, and of every other right or interest in my estate."

His codicil was dated February 11th, 1887, and, the formal parts being excepted, is in these words :

" In addition to the provisions which in and by my said will I have made for the benefit of my beloved wife Emma Giles, I do give and bequeath unto her all my household goods and furniture absolutely, as and for her own property, and to be at her own disposal : And also I do give, devise and bequeath unto my said wife, in fee simple, all the one equal third part of my real estate, whether the same be situate in the City of New York or in any other part of the State of New York, or elsewhere in the United States of America, and these gifts are to take effect whether or not she shall remarry after my death, if she shall survive me.

" I do revoke and annul every gift and every devise to my two nieces, Anne Gilbert and Bella Giles, named in my said will, or to either of them, and to any child, children or issue of theirs or of either of them. Hereby declaring that it is my will that my brother William P. Giles and my nephew John G. Kinkele shall take in equal shares the portion of my estates which in and by my said will is given, devised and bequeathed to them and my said two nieces Anne Gilbert and Bella Giles, saving and excepting therefrom the one equal third part of my real estate and the household goods and furniture which I have herein given, devised and bequeathed to my said wife Emma Giles.

" Provided, however, that if either of them, my said brother William P. Giles and my said nephew John G. Kinkele, shall have died before my death leaving issue who shall survive me, the share of such deceased shall pass to and vest in the child, children or issue of such decedent. But, if either of them shall die leaving no such issue, such share of the decedent shall pass to and vest in the survivor of my said brother or nephew as the case may be.

"Except as altered by this codicil I do confirm and republish my said will."

He left a small amount of personal property and certain real estate known as numbers 163, 165 and 175 Canal street in the city of New York, upon which there was a mortgage for $15,000, and the entire rents thereof, amounting, after deducting all expenses, to about $4,500 per annum, were paid by the executor to Mrs. Giles, until she remarried on the 11th of February, 1891. Since May 1, 1891, when the executor first learned of the marriage, he has paid her but $2,000 a year, and the remainder of the rents are still in his possession. This action was brought in form for an accounting, but the pleadings put at issue the construction of said will and codicil.

The plaintiffs claim that they, respectively, and the defendant each took one equal third of the real estate in fee simple, subject to the charge of $2,000 per annum, payable to the defendant, since her remarriage, during her lifetime. The defendant claims that she took one-third of the real estate absolutely, and that she is also entitled to receive $2,000 a year from the rents of the other two-thirds.

The referee sustained the defendant's contention and rendered judgment accordingly, but the General Term reversed it, and awarded judgment in favor of the plaintiffs and in accordance with their theory. The defendant appeals to this court.

*Joseph Potter, F. A. Burnham* and *George Burnham, Jr.,* for appellant. It is clearly manifest from the fact that he made a codicil and the language employed in the codicil that the testator intended to increase the quantity and value of the estate bequeathed to his wife by the will. (1 Washb. on Real Prop. 51; 6 Am. & Eng. Ency. of Law, 876; *Arcularius* v. *Sweet,* 25 Barb. 403; 3 Bradf. 64; Redfield's Law & Pr. 224, 227, 228; 2 Wigram on Wills, 11; *Keteltas* v. *Keteltas,* 72 N. Y. 315; *Campbell* v. *Rawdon,* 18 N. Y. 412–417; *Corrigan* v. *Kiernan,* 1 Bradf. 208–210; *Sherwood* v. *Sherwood,* 3 Bradf. 230; *DeKay* v. *Irving,* 5 Den. 646; *Parks* v. *Parks,*

9 Paige, 107; 5 B. & Ald. 640; *Moore* v. *Lyons*, 25 Wend. 155; *Van Vechten* v. *Van Veghten*, 8 Paige, 104; *Barlow* v. *Coffin*, 24 How. Pr. 55; *Brant* v. *Willson*, 8 Cow. 56.)

*William W. Buckley* for respondents. The payment of $2,000 per annum to the defendant is expressly charged upon all the testator's estate by his will. This charge is expressly removed by the codicil from the household goods and furniture. (*Taggart* v. *Murray*, 53 N. Y. 233; *Lynch* v. *Penderyast*, 67 Barb. 501; *Mouk* v. *Moak*, 8 App. Div. 197.) The expressed revocation by the codicil of certain provisions of the will negatives, by implication, the intention to alter the will in any other respect. (*Wetmore* v. *Parker*, 52 N. Y. 450; *McLoskey* v. *Reid*, 4 Bradf. 334.) The devise in the codicil of one equal third of the real estate to the defendant is not repugnant to the charge of the annuity in the will upon the entire estate. (*Viele* v. *Keeler*, 129 N. Y. 190; *Austin* v. *Oakes*, 117 N. Y. 577–598; *Crozier* v. *Bray*, 120 N. Y. 375; *Taggart* v. *Murray*, 53 N. Y. 233; *Pierpont* v. *Patrick*, 53 N. Y. 596; *Redfield* v. *Redfield*, 126 N. Y. 466.) The devise in the codicil of one equal third of the real estate to defendant must be read after the charge contained in the will imposed upon the entire estate. (*Hard* v. *Ashley*, 117 N. Y. 606; *Pierpont* v. *Patrick*, 53 N. Y. 591.)

VANN, J. The scheme of the will was that the defendant should not take the title to any of the property left by the testator, either real or personal, but that she should have the entire income from all of it so long as she lived and remained his widow. In case of her remarriage, however, instead of the entire income, he gave her simply an annuity of $2,000. Whether she remarried or not, these provisions were made, and, if accepted by her, were to be in lieu of dower and every other interest in his estate. All that he did not give to his wife he gave to his four residuary legatees, being a brother, a nephew and two nieces. In other words, he gave the income to her during life, and the title to them, except that upon the

35

contingency of her marrying again, he gave her a part only of the income during life, and all the rest of his estate, including both title and the remainder of the income, to them.

The scheme of the codicil, made seventeen months later, was not to take anything away from his wife that he had given to her by his will, but to give her something more. Hitherto he had given her simply income, but now he proposed to give her the title to a part of his property "in addition to the provision" made for her benefit in the will. Accordingly, by apt words to effect his purpose, he bequeathed to her all of his "household goods and furniture absolutely and as and for her own property and to be at her own disposal." This included all of his personal property, which was of no great value. But he did not stop there, for he wanted to give her the title to a part of his real estate in the same way that he had given her the title to all of his personal property. Accordingly, he said, as a part of the same sentence, for no period intervenes and the sense is continuous, "and also I do give, devise and bequeath unto my said wife, in fee simple, all the one equal third part of my real estate," and directed that these gifts should take effect whether she remarried or not. He then revoked the gift made by the will to his two nieces and gave their shares to his brother and nephew, the plaintiffs in this action, but for greater precaution he added, "saving and excepting therefrom the one equal third part of my real estate and the household goods and furniture which I have herein given, devised and bequeathed to my said wife, Emma Giles," thus treating the gifts of real and personal as alike in character and extent. Except as altered by the codicil, he confirmed and republished his will.

As the widow remarried, the question arises whether she took the title to one-third of the real estate charged, in connection with the other two-thirds thereof, with the provision for her annuity, or whether she took it the same as she did the personal property, "absolutely as and for her own property and to be at her own disposal." The argument in favor of the existence of the charge rests primarily upon the opening

words of the residuary clause of the will, which are as follows:
"And subject to this provision for my said wife, I do give,
devise and bequeath my said estates to my brother," &c.
There was clearly no express charge, and, in view of the
scheme of the will as remodeled and enlarged by the codicil
for the benefit of the widow, and considering the nature and
extent of his property in connection with the words used in
amplifying the gift to her, we think that any implied charge
was removed from the real estate devised to her. While a
devise subject to a charge in favor of a third person is very
common, a devise subject to a charge in favor of the devisee
is such an unusual method of giving away property as to raise
the question at once whether that was the actual intention.
In this case it would be hostile to the general plan of the
testator, when the object of the will is compared with that
of the codicil. The object of his will was to provide for
the support of his wife without giving her the title to any
thing. The object of the codicil was to continue the pro-
vision for her support and at the same time to make gifts
absolute and outright to her. In a single sentence he gave
her two kinds of property "in addition to the provisions" for
her benefit in the will. In giving her the first kind, which
happened to be personal, he wished to leave no doubt of his
intention to no longer limit her to the income, but to give her
the property itself, free from any charge thereon, and accord-
ingly he bequeathed it to her "absolutely as and for her own
property and to be at her own disposal." Having thus dis-
posed of the personal property he took up the other kind and
disposed of a portion of that, saying, "and also I do give,
devise and bequeath unto my said wife in fee simple all the
equal one-third part of my real estate." There is nothing to
show an intention to discriminate as to the nature or extent of
the two gifts, except as the gift of the personal was by bequest,
absolutely, and the gift of the realty was by devise in fee
simple. The language used was appropriate to confer the
highest title to both kinds of property, and by connecting the
two gifts in the same sentence by the words "and also" he

indicated, as we think, when the general scheme of his will is taken into account, an intention to make the latter gift in the same manner as the former. The primary meaning given by most lexicographers to the word "also" when used as an adverb, as it is here, because two conjunctions would not be used together, is "in the same manner," or "in like manner," or "likewise." It is also used with the meaning of "too," "farther," and "in addition to," but as the testator had already introduced the sentence by using the words "in addition to," it is probable that "also" was here used with the meaning first suggested. This is rendered still more probable by the keynote of the codicil, which is the intention of the testator to give the absolute title instead of merely the income, as previously given. As his estate was situated, the gift of one-third of the realty, subject to the charge of his wife's annuity upon the whole, would have been of slight practical value and an unimportant addition to the gift made by the will, as the entire benefit thereof might have been withheld from her during her lifetime. Its present and absolute enjoyment seems so inseparably connected with that of the personal property as to show an intention to give both in the same way, without discriminating in favor of or against either kind. He had no children, and both the will and codicil show that his first object was to provide for his wife. When he made his will the apprehension that she might remarry induced him to greatly reduce the provision for her benefit, if that contingency should happen, but when he made his codicil this apprehension was less active. He then wanted to be more generous to her, whether she married again or not, so he gave, "in addition" to his first gift, the personal property absolutely "and also" one-third of his real estate in fee simple. He thereby carried forward to the devise the words used to qualify the bequest and thus measured the extent of the gift. We do not agree with the learned General Term that "some error has crept into the codicil as it stands," or that the colon which separates the bequest from the devise was intended for a period, even if the word "and," with which the latter is said to begin, was

written with a capital "A," because the words used indicate
one continuous sentence, which is confirmed by the punctua-
tion, as the testator left it. There is no occasion for changing
the punctuation marks as he made them. The natural sense
in which words are used, as it appears from judicial inspec-
tion, always prevails over both punctuation and capitals, which
are regarded as such uncertain aids in the interpretation of
written instruments as to be resorted to only when all other
means fail. (*Ewing* v. *Burnet*, 11 Pet. 41, 54.) When, as in
the will before us, the punctuation accords with the sense, the
use of a capital in the middle of a sentence must be regarded
as accidental and should not be permitted to confuse a con-
struction otherwise reasonably clear. A capital letter so used
in a holograph will would have more significance than in one
written, as this is said to have been, by a draftsman and read
to the testator, who could not, of course, detect the difference
from the sound.

The General Term placed great reliance upon *Redfield* v.
*Redfield* (126 N. Y. 466), where it was held that a codicil will
not operate as a revocation of a previous testamentary disposi-
tion beyond the clear import of its language. In that case the
object of the testator was to induce his wife, from whom he
had separated, to release her claim of dower as well as an
agreement for her support, and it was accordingly held that an
annuity given to her by will for that purpose and charged
upon certain land was not revoked by a change of the devisees
in remainder, as there was no express language to that effect
and no substitute for the annuity, "which was to furnish the
consideration for a release of her dower and was to be a sub-
stitute for his obligation to pay her $400 per year." The dis-
tinction between that case and this resides in the manifest
intention of the testator and the object that he wished to
accomplish. That was in the nature of an attempt to
buy off a discarded wife, while this was a further pro-
vision for one, whom the testator termed "his beloved
wife." In that case the codicil was not made with refer-
ence to the wife, for her name does not appear in it, but

in this case the purpose. of the codicil was to benefit the wife by giving her something "in addition to" the gift already made in the will. Nothing was taken back, but something was added, both of real and personal property, and each kind was given, as we think, in the same manner as an out and out gift, free from any charge for the benefit of the donee.

The judgment entered upon the decision of the General Term should, therefore, be reversed and the judgment entered upon the report of the referee affirmed, with costs.

All concur.

Judgment accordingly.