### REYNOLDS v. REYNOLDS.

1. LIMITATION OF ESTATES.—A devise to R., "to have and enjoy the use of said premises during his natural lifetime, then revert to his children, and their children that may be living," conveys a life estate to R., with remainder *per capita* to children and grand-children of life tenant *in esse* at his death.

2. WILLS.—In the construction of a will extrinsic evidence is not admissible to explain plain and unambiguous language; nor can such words be modified by surrounding circumstances; or that some children or grand-children were dearer to testator than others; nor by results; nor by punctuation marks.

Before McCULLOUGH, special Judge, Greenwood, June, 1902. Affirmed.

Action by Henrietta B. Reynolds *et al.* against Rosa L. Reynolds *et al.* From Circuit decree, plaintiff appeals.

*Messrs. Graydon & Giles,* for appellant, cite: *Intention must govern:* 19 S. C., 348, 8 L. R. A., 745. *Court is authorized to put itself in position of testator:* 134 U. S., 572; 5 West. R., 154; 113 Pa., 500; 95 N. C., 239; 103 N. Y., 453; 2 Brad., 418; 104 N. Y., 325. *As to changing words:* 1 DeS., 242, 353; 1 Speer, 258; 7 Rich., 422; 23 S. C., 453; 19 S. C., 345; 9 Rich., 471.

*Messrs. Sheppards & Grier,* contra, cite: *Words can only be changed when there is no doubt as to intention:* 7 Rich. Eq., 425; 19 S. C., 351; 3 S. C., 95; Chev. Eq., 90; 1 Speer L., 258; 23 S. C., 455. *Intention is rule:* 59 S. C., 148. *All who constitute the class when provision takes effect take per capita:* 7 Rich. Eq., 125; Moor. on Lim. of Est., 34.

March 25, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiffs and the defendant, Rosa L. Reynolds, conceiving that they were tenants in common of a tract of land of seventy-five acres, near the town of Greenwood, in this State, under the fourth clause of the will of their grand-father, Bennett Reynolds, senior, began suit for partition of said lands amongst themselves; but learning that the defendants, other than Rosa L. Reynolds, claimed an interest in said lands, so amended the pleadings that said persons, called herein the Tarrant children (who were brothers and sisters), were made parties defendant. Being all minors, they answered through their guardian *ad litem,* setting up title in each one of said children of said seventy-five acres of land along with the plaintiff. At the hearing before special Judge, Joseph A. McCullough, the plaintiff demurred to the answer of the Tarrant children, on the ground that the same did not set up facts constituting a defense. The decree of the special Judge was in favor of the defendants, the Tarrant children. Thereupon the plaintiff appealed to this Court, asking that the Circuit decree be reversed. The following is a copy of the decree of the Circuit Court:

"This was a motion by the attorneys for the plaintiffs herein to strike out the answer of the infant defendants, Bennie C. Tarrant, Annie L. Tarrant, Guy M. Tarrant and Blanch G. Tarrant, upon the ground that the said infants have no interest in the estate sought to be partitioned. The contention arises as to the construction of the fourth clause of the will of Bennett Reynolds, sr., which clause is as fol-

lows: '4th. I devise and bequeath unto my son, Bennett Reynolds, jr. In addition to land already given him a certain lot or parcel of land, situate near the town of Greenwood, containing seventy-five acres adjoining lands of Dr. A. P. Boozer, L. D. Merriman, and Bennett Reynolds; beginning at the Boozer corner on the new cut road towards blacksmith shop. To a certain point, thence north west to a certain line running west from said line up the branch to Merriman's corner, then south to Bennett Reynolds land and to said new cut road embracing seventy-five acres. To have and enjoy the use of said premises during his natural life, then revert to his children, and their children that may be living.' The children of the life tenant, Bennett Reynolds, jr., now deceased, claim that they are the owners in fee as tenants in common and entitled to the partition of the said real estate. The infant defendants, who are the children of the plaintiff, Ida R. Tarrant, claim that they were *in esse* at the time of the death of the life tenant, and that under the said will they belong to the class then entitled to take share and share alike with his children. Certain testimony was submitted along with the pleadings, much of which was objected to by the attorneys for the Tarrant children. The plaintiffs claim that the word 'and,' in the last clause of the said will shoud read 'or,' so that as changed the latter section would read as follows: 'To have and enjoy the use of said premises during his natural lifetime, then revert to his children, "or" their children that may be living.' Plaintiffs admit that if the said change is not made, under the language of the will as it now reads, the said Tarrant children would share *per capita* with the plaintiffs. The said defendants contend that the language of the testator is plain and unambiguous, and there is no reason why such an unauthorized liberty should be taken with the will in question.

"I will state that this question has given me no little concern, for the reason that if I am allowed to speculate as to the probable intention of the testator, I would say that

in my opinion he intended to create a life estate in his son, Bennett Reynolds, jr., and at his death the property should descend to the children of the said Bennett Reynolds. jr.; and in the event of the death of any child leaving child or children, such child or children shoud take the portion their parent would have been entitled to. In fact, I had concluded to sustain the plaintiffs' contention, but upon subsequent reflection, and a more critical examination of the authorities, I am satisfied that my first impressions were wrong.

"The case of *Wessinger* v. *Hunt,* 9th Rich. Eq., at page 459, decides: 'Where there is a bequest to one for life,' and at her death to be equally divided amongst a class of persons, as 'my children and grand-children,' all who come within the terms of description at the death of the tenant for life, whether *in esse* at the death of the testator or born afterwards, are entitled to take; and if there be nothing in the will indicating a contrary intent, they take equally and *per capita.* At page 472, the Court uses the following pertinent language: 'The *jus disponendi* is absolute in the testator; and he has the right to dispose of his estate, as his judgment or caprice may dictate. And if he has expressed his meaning plainly, no tortured interpretation should be resorted to for the purpose of defeating his purpose; even though he may be supposed to have made an unnatural will. If, without wresting the import of the words employed, the will admits of two interpretations, the Court will adopt that which is the most natural.' Now, in the case at bar, if the testator had said, 'To have and enjoy the use of said premises during his natural lifetime, then revert to his children and grand-children that may be living,' I think it would be conceded that by this language the testator intended to designate a class which would be entitled to take upon the death of the life tenant. By the use of the words 'his children and their children,' is not the result just as effectually accomplished? Suppose that the testator had desired that upon the death of the life tenant the property should

go *per capita* to the children of the life tenant, and such grand-children as were then *in esse, could* he have effectuated such intention by the use of language more appropriate or explicit? To say under such circumstances that he did not so intend, would be speculation; to disinherit these grand-children by changing words conveying a different maening, would be to make another will for Bennett Reynolds, sr.

"In the case of *Cunningham* v. *Cunningham,* 20 S. C., at page 330, the rule is thus stated: 'Where the object of the testator's bounty, or the subject of disposition (*i. e.,* person or thing intended), is described in terms applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator.' This kind of evidence can be admitted when it 'merely tends to explain and apply what the testator has written, and no evidence can be admitted which merely shows what he intended to write.' *McCall* v. *McCall,* 4 Rich. Eq., 455, quoted, approved and applied in *Scaife* v. *Thompson,* 15 S. C., 357. There can be no doubt as to what persons were intended in either of these wills, or what property is covered by the language used. There is no latent ambiguity which calls for extrinsic evidence as to either the persons or property, and the conclusions reached as to the proper construction of the wills themselves cannot be controlled by any testimony which has been offered as to any intentions not expressed in the wills themselves.'

"In the case of *Howze* v. *Barber,* 29 S. C., at page 470, the Court says: 'The cardinal rule is to seek for the intention of the testator, not by resorting to conjecture as to what was likely to have been his intention, but by a careful consideration of the language which he has used, aided by such rules of law as may be applicable. We are to read the will as a whole, and from its terms ascertain, as near as practicable, what was in the mind of the testator when the will was executed.' I know that in many instances the Court has changed words and interpolated words in order to

give effect to the evident intention of the testator, but such intention must first be gathered from the language of the instrument alone, irrespective of matters extrinsic. If the language be doubtful, the will may be read with most extreme caution, in the light of surrounding circumstances. But in this case, the language employed is not doubtful, nor is there any general or uniform scheme of disposition evidenced by the testator's will to effectuate which it would be necessary to change the language used, nor is it necessary to change the language in order to make the context sensible. I have been unable to deduce from the cases a principle, the application of which to the facts of this case would render it necessary that I change the language of this will. At one time I thought of reading the word 'children' as heirs of the body, or bodily heirs, thereby attempting to create a fee conditional in the children of Bennett Reynolds, jr., in which event the language would be as follows: 'To have and enjoy the use of said premises during his natural lifetime, then revert to his children and their *bodily heirs* that may be living.' It will be observed, however, that that would not remedy the difficulty, for the reason that by the use of the language, 'that may be living,' the fee conditional would be destroyed and the bodily heirs would take as purchasers. I thought also of inserting the words 'then to,' just before the word 'their,' so that said section would read: 'To have and to enjoy the use of said premises during his natural lifetime, then revert to his children and *then to* their children that may be living,' thereby bringing this case within *Clark* v. *Clark,* 19 S. C., page 351. It will be observed, however, that the effect of this change would be to create two life estates, to wit: one in Bennett Reynolds, jr., and the other in the children of Bennett Reynolds, jr., with the limitation over to their children, thereby mounting a second limitation over upon the second life estate to the children of the said Bennett Reynolds, jr. Inasmuch as the testator evidently intended to create only one life estate, such a change would be unauthorized, and would defeat the man-

ifest intention of the testator. It is urged, however, that the testator's intention would be carried out if we read the word 'and,' as it occurs in the last clause of the will, 'or,' so that said section would read: "To have and enjoy the use of said premises during his natural lifetime, then revert to his children or their children that may be living.' It is contended that thereby the grand-children of Bennett Reynolds would not take except in the event of their parent's death, and would only take the share their parent would have been entitled to. In the first place, I have grave doubts as to whether or not to make the change contended for would accomplish this result, inasmuch as in that event the testator would constitute the children of Bennett Reynolds, jr., a class who would take upon his death, and the grand-children would only take in the alternative and in the event that none of the children of Bennett Reynolds should survive the life tenant. The rule is well settled that when a legacy is given to a class of persons in general terms, and one or more dies in the lifetime of the testator, those of the described class who survive the testator take the whole estate. I do not, however, rest my conclusion upon this ground. I decide this question neither one way nor the other. From my examination of the cases, I find that in those instances where the Courts have read 'or' 'and,' or 'and' 'or,' have been cases: (1) When it was necessary to the early vesting of an estate so as to let in lawful issue who would otherwise be cut out. (2) When necessary to preserve an estate for the objects of the testator's bounty. (3) When necessary to the vesting of a particular estate evidently intended to be created in a particular individual or individuals. (4) When necessary to effectuate the testator's intention as to a general scheme of testamentary disposition, which general scheme is clearly evidenced by an inspection of the will itself. (5) When necessary to make the context sensible or consistent. I have found no case where 'and' has been read 'or,' or *vice versa,* when the effect would be to cut out a portion of a class otherwise clearly embraced. In this

case the testator, if he had been so advised, had the right to limit this estate to his son, the life tenant, the principal object of his bounty, and then to his grand-children and such of his great-grand-children as might then be *in esse.* So far as the Court is advised, the grand-children had no greater claims upon his generosity than the great-grand-children. He has done so in language clear and unambiguous. I cannot say that he did not intend the plain, ordinary meaning of his language.

"I, therefore, overrule the motion to strike out the answer of infant defendants, and refer the case to the master to take testimony upon the issue raised by the pleadings and report the same to the Court with all convenient speed."

From this decree the plaintiffs appeal on the following exceptions:

"1. His Honor, the presiding Judge, erred in not considering the testimony submitted, and in holding that said testimony was inadmissible to explain or throw light upon the intention of the testator, when the said testimony was taken and submitted to his Honor, to be considered by him in the decision of this case along with the pleadings by mutual agreement and consent of the counsel of both the plaintiffs and defendants.

"2. Because his Honor, the presiding Judge, erred in holding that although he believed the intention of the testator was to give his son, Bennett Reynolds, jr., a life estate, with remainder to his children in fee, and in case of the death of any of his children (grand-children of Bennett Reynolds, sr.,) leaving children, that they were to represent their parent and take their parent's share; yet according to a strict construction of the said will by the words and terms employed, and disregarding the agreed facts as appearing by the testimony taken by the master, that Bennett Reynolds, jr., took a life estate, with remainder in fee to his childern and the grand-children (great-grand-children of Bennett Reynolds, sr.,) who were *in esse* at the death of said Bennett Reynolds, jr., the life tenant.

"3. Because his Honor, the presiding Judge, erred in not holding, in the light of the surrounding circumstances, which were admitted by consent of counsel of both sides to this controversy for his consideration, that Bennett Reynolds, sr., intended by his will to give to his son, Bennett Reynolds, jr., a life estate in said lands, with remainder in fee to his children, the child or children of any deceased child to represent his parent, and take his share. When the said surrounding circumstances did convince his Honor, as evidenced by this language, used in his decree, viz: 'I would say that in my opinion he intended to create a life estate in his son, Bennett Reynolds, jr., and at his death the property should descend to the children of the said Bennett Reynolds, jr., and in the event of the death of any child, leaving child or children, such child or children should take the portion their parent would have been entitled to.'

"4. Because his Honor erred in not holding that the circumstances surrounding a testator at the time he made his will may be always shown, in order to arrive at the intention he meant to convey by the words used.

"5. Because his Honor should have held that the circumstances proved in the evidence submitted, irresistably showed that the testator's grand-children were the principal objects of his bounty, and that he did not intend his great-grand-children to take anything under his will except by right of representation of their parents.

"6. Because his Honor should have held that the language used in the will shows that the testator intended to give his land to his grand-children, and that his great-grand-children were not to take any part of it except by right of representation of their parents.

"7. Because his Honor should have held that the word 'or' should be construed to mean 'and,' or in order that the evident intention of the testator to make his grand-children the primary objects of his bounty, and to allow his great-grand-children to succeed to it only by right of representation of their parents, might be carried out.

"8. Because his Honor should have held that the construction contended for the infant defendants, the effect of it being to give them more than a third of the whole estate devised, although they were not born at the time the will was made, was so manifestly partial and unjust, that the testator could not have intended to do what they claim he intended by his will.

"9. Because his Honor should have held that by placing the comma between the word 'children' and the word "and,' the testator meant to show that his grand-children were the primary objects of his bounty, and that his great-grand-children were not to take except by right of representation of their parents."

We have considered all of these exceptions, and do not find any one of them capable of overturning the admirable Circuit decree.

1. As long as there was no ambiguity in the will or anything else therein which called for explanation, the testimony was not necessary, for it only tended to explain the relationship of the parties to the testator, it did not and could not explain away the fact that there were *in esse* at the time of the death of the life tenant, grand-children and great-grand-children, who were the life tenant's children and the children of such children of the life tenant's. This exception is overruled.

2. The belief of the Circuit Judge could not be allowed to override his solemn conclusions of this will. This exception is overruled.

3. The "surrounding circumstances" cannot be allowed to override a plain, intelligible statement by the testator of his wishes in regard to the disposal of his property. Those "surrounding circumstances" fail to show any preference for the grand-children over his great-grand-children, who were out of the body of Bennett Reynolds, jr. This exception is overruled.

4. There was no need of explanation of the circumstances surrounding the testator, as far as the language used by him

in the fourth clause of his will go. This exception is over-ruled.

5. The words used by the testator in his will as to its fourth clause were plain and unambiguous, and, therefore, negatived any resort to extrinsic circumstances. It is a solemn thing to add words to a last will and testament. This exception is overrued.

6. As we have heretofore held, there is nothing in the will as to its fourth clause which showed that testator's grand-children were dearer to him than his great-grand-children. All who were *in esse* at Bennett Reynolds' death take. This exception is overruled.

7. We think the testator had to use his own words to express his intentions. He chose the word "and" and not "or." The exception is overruled.

8. We cannot be governed in the construction of the language used by a testator in his will by the results. When we have construed the words of the will, that is the end of the matter; what share one gets under a will is none of our business. The testator makes his will, we will not, and dare not, do so. This exception is overruled.

9. Punctuation is too uncertain—often a mere matter of taste in the writer—to base a right to alter at will the words used by the testator. This exception is overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.