## In re RAU'S ESTATE.

(Surrogate's Court, Monroe County.   January 14, 1913.)

1. WILLS (§ 488*)—CONSTRUCTION—EVIDENCE TO AID.

In an action to construe a will bequeathing to testator's niece 50 shares of bank stock, or if testator disposed of them before his death, "the equivalent of said shares at their par value; and in addition thereto the sum of $6,000," evidence as to the execution of the will and the circumstances of the estate was admissible to show whether the testator intended that his niece should receive $6,000 in addition to the stock, in any case whether he had disposed of the stock or not; the use of the semicolon rendering the will ambiguous in this respect.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033–1036; Dec. Dig. § 488.*]

2. WILLS (§ 487*)—ACTION TO CONSTRUE—SUFFICIENCY OF EVIDENCE.

Evidence in such case *held* to show that testator intended his niece to receive the bank stock alone in case he died possessed of same.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

3. WILLS (§ 465*)—CONSTRUCTION—SEMICOLON.

Where, to give effect to a semicolon in a will would import an unreasonable and unnatural intention to the testator, and to treat it as a comma will import a reasonable intention consistent with the circumstances under which the will was executed and the condition of the estate, and leave the meaning clear, the latter construction will be adopted.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 984; Dec. Dig. § 465.*]

Action to construe the will of Charles Rau, deceased.  Frieda Rau Cormier found entitled under the will to bank stock only.

Charles M. Williams, of Rochester, for legatee Frieda Rau Cormier. James M. E. O'Grady, of Rochester (John Desmond, of Rochester, of counsel), for executor and residuary legateee.

BROWN, S.  The question to be determined upon this proceeding is as to the construction of the sixth clause of the will of the deceased, in order that the executor may be directed as to what is bequeathed to Frieda Rau Cormier under such clause.

[1] The said clause reads as follows:

"Sixth. I give and bequeath to my niece Frieda Rau Cormier of Rochester, N. Y. Fifty (50) shares of the Capital Stock of the National ,Bank of Rochester; and in the event of my disposing of said shares before my death, I give and bequeath to her the equivalent of said shares at their par value; and in addition thereto the sum of six thousand dollars ($6,000)."

Two contentions have been raised.  The legatee claims that she is entitled to the 50 shares of stock and the sum of $6,000.  The executor and the residuary legatee claim that she is only entitled to the 50 shares of stock; that the $6,000 was to be given to her in case the testator disposed of said 50 shares of stock prior to his death; that the $6,000 was simply given in case of such sale; but that, if

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the 50 shares were on hand at the time of his death, that alone passes to the legatee.

Reading the words of that clause without taking into consideration what results therefrom, or the facts connected with the making of the will and the condition of the estate of the deceased, and simply observing the technical punctuation, it would appear that the claim of the legatee was well founded, but it all depends upon whether or not the semicolon after the word "value" stands, and is to be regarded as decisive. Now, the courts have held that the natural sense in which words are used, as it appears from judicial inspection, always prevails over both punctuation and capitals, which are regarded as such uncertain aids in the interpretation of written instruments as to be resorted to only when all other means fail. Kinkele v. Wilson, 151 N. Y. 269, 276, 277, 45 N. E. 869.

In Arcularius v. Sweet, 25 Barb. 403, the court says regarding a semicolon giving a particular meaning and distinction to the will:

"A single dot over a comma, so easily inserted by mistake or design, and so different, if not impossible, in most instances, of proof or disproof, can never be allowed to overthrow the natural meaning of the written words, whether taken by themselves or in connection with the whole instrument. * * * Punctuation may perhaps be resorted to when no other means can be found of solving an ambiguity, but not in a case where no real ambiguity exists except what punctuation itself creates."

As the disagreement between the respective parties here rests upon whether or not the semicolon should stand and the construction be made technically under the rules of grammatical punctuation, I am of the opinion that this is a case of ambiguity which is caused by punctuation, and therefore the court has full power and authority to consider the evidence offered relative to the execution of the will and the circumstances of the estate, to arrive at the intent of the testator.

[2, 3] It appears from the evidence that the testator came to the office of his attorney and requested him to make his will; that from that conversation the attorney dictated the will to his stenographer, who prepared the same on the typewriter, brought it back to the attorney, and he then read the same to Mr. Rau, the testator; that at the time of the execution of the will Mr. Rau did not read the same personally, and immediately after hearing it read he executed the will in question, which has been heretofore admitted to probate. There is no evidence to show that Mr. Rau ever read the will personally. The reading aloud of the will to the testator by his attorney would not necessarily disclose the punctuation, and accordingly, nothing appearing to the contrary, it is to be presumed that Mr. Rau did not know the punctuation.

Now, if the semicolon after the word "value" was omitted and either a comma stood there, or no punctuation, an entirely different construction would be placed upon the language. In that case it would appear that the stock was given to the legatee; then, in case of the sale of the stock, the legatee would receive $5,000, and, in addition thereto, $6,000, making $11,000. It appears from the evidence that at the

time of the making of the will the stock in question was worth about $220 per share market value, and the stock quotation of said shares was about the same. The book value of said shares was $228.81 per share. At the time of the death of the testator the value of the stock was substantially the same as at the time of the making of the will. The par value of the shares was $100 per share. Now, if we make a computation as to the value of this gift in the two contingencies and under the different claims, it appears as follows: Under the claim of the legatee, Mrs. Cormier, if the testator died owning the stock, she would receive the 50 shares of stock, worth $220 per share, amounting to $11,000, and the sum of $6,000, making her legacy in such case worth $17,000. On the other hand, if the testator had disposed of said stock in his lifetime, she would receive the par value of said 50 shares, to wit, $5,000, and said sum of $6,000, making her legacy in that case worth $11,000. In other words, there would be a difference in the value of her legacy of $6,000, depending upon the contingency whether or not the testator sold said stock in his lifetime.

The contention of the executor and residuary legatee is that, in case the testator died owning the stock, the value of the legacy to Mrs. Cormier would be the value of 50 shares at $220 a share, to wit, $11,-000. In case he had died having sold the stock, she would be entitled to the par value of 50 shares at $100 a share, equalling $5,000, plus the $6,000, making $11,000, which makes the legacy practically of the same value, whichever contingency existed at the time of his death, the ownership or the nonownership of the stock.

Now, with the semicolon after the word "value" eliminated and left as a comma, or no punctuation mark, it would be perfectly clear that the testator intended to give the legatee the 50 shares of stock only provided he possessed them at the time of his death, and, in case he did not possess them, then the sum of $5,000, and, in addition thereto, the sum of $6,000. Leaving the semicolon there after the word "value," the $6,000 would be a separate gift in addition to either the stock or the $5,000, according to the contingency. But this construction is neither a reasonable nor natural construction to give to this language as the true intent and purpose of the testator. It is not reasonable to suppose that the testator intended to make a difference of $6,000 in the value of the legacy that he was giving to Mrs. Cormier. He was attempting to give an alternative legacy in case he did not own the stock. He died owning the stock, and it is not reasonable to suppose that he intended to give her $6,000 on top of the stock, when that $6,000 added to the par value of the stock, taken together, make an alternative legacy of equal value substantially to the legacy of the stock alone. The construction sought for by the legatee would give this semicolon a force and effect unknown to the rules of construction established by the common law. In such a case it should not be allowed to confuse a construction otherwise clear.

The testator had no children. His wife had died prior to his demise. He had no lineal descendants. The legatee was a niece. Nothing in the surrounding circumstances of the execution of the will, or

of the condition of the affairs of the testator, nor of the will itself, show any grounds for assuming or believing that the testator had in mind the making of such difference in the value of the alternative legacies, but, on the other hand, it appears to the court that the alternative legacy was intended to make good to the legatee the value of the stock in case the stock was sold, and, in case the stock was not sold, the alternative legacy had no force and effect, but that all that the legatee was entitled to under said sixth clause in that case would be the stock.

I find as conclusions of law that the legatee is entitled to the stock in question, in full of her claim under said legacy, except that the dividends on the stock from the time of testator's death (said stock being a specific legacy) should also be allowed the legatee, if it has not already been paid to her.

Let findings be prepared in accordance with the terms of this decision and decree entered thereupon in the decree of judicial settlement, upon five days' notice or voluntary appearance of counsel in court, without costs to either party as against the other.