TREANOR v. TREANOR et al.—152 S. W. (2d) 1038.

Middle Section.   April 19, 1941.

Petition for Certiorari denied by Supreme Court, June 28, 1941.

Rutherford & Rutherford and Charles H. Rutherford, Jr., all of Nashville, for appellant.

Goodpasture & Carpenter, of Nashville, for appellee Mrs. Florence H. Treanor et al.

CROWNOVER, P. J. This suit involves the construction of a will. The will of John B. Treanor, Sr., deceased, is a holographic will. It was written by him, in his own handwriting, without legal advice. The will is as follows:

"My Will

"Jno. B. Treanor Sr.

"February 4—1938

"I Jno. B. Treanor Sr. of Craggie Hope Cheatham Co. Tennessee, being of sound and disposing mind and memory do hereby declare this to be my last will and testament hereby revoking and making void all other wills by me at any time made

"First: I desire all my just debts paid as soon as convenient to my here in after named Executor

"Second: To my sons and daughter I hereby will devise and bequeath the following articles of my personal belongings: To Jno B. Treanor Jr. my fathers rod and reel To son Joe H. my 38 caliber pistol and my watch I now carry to son W. O. II the horn handle razor which Grandfather Bell used when in the Queen's Guards and the remainder of my fishing tackle: To Thos Stardey my remington pump gun To Lawrence L my gold faced watch: To Mercer my personal Elgin watch which he now has and my other hand razor: and to my daughter my mothers house hold silver.

"Third: To my wife Florence Haggins Treanor as long as she is Mrs. Treanor I will devise and bequeath the remainder of my property both real and personal or mixed of which I die possessed or to which I may acquire and be entitled to dispose; as she sees fit

"Fourth: And last I hereby nominate and appoint my son Lawrence L. Treanor as the Executor of this my last will and Testament and having full confidence in him I request that he be allowed to serve with out bond. In case of his inability to serve I appoint my daughter Georgena Treanor to serve in his place and stead and under the same circumstances:

"This is my last will and testament and has been by me made without any undue influence or persuasion by any person or persons whatsoever.

"Witness my hand and seal to this my last will and testament at Nashville Tennessee this fourth of February 1938.

"John Bell Treanor Sr.

"Jno. B. Treanor Sr."

The controversy which is the basis of this suit is between one of his sons, John B. Treanor, Jr., complainant, and his widow, Mrs. Florence

H. Treanor, and his other sons and daughter, as defendants, and is over the meaning of the third item of the will. The complainant contends that it was his father's intention to devise to Mrs. Treanor a life estate in the realty subject to be defeated by her marriage, with remainder to his sons and daughter, or that the testator died intestate as to said remainder interest.

The defendants insist that item three devises to Mrs. Treanor an estate during widowhood, with power to dispose of the same "as she sees fit"; and that the addition of this last clause has the effect of creating in her an estate in fee simple.

This controversy depends solely upon a question of punctuation. There is a semicolon after the word "dispose," and the clause "as she sees fit" follows it. To construe the third item as the complainant asks, would require that the clause "as she sees fit" be dropped from the will. To construe it as the defendants ask, it would require that the semicolon be dropped and a comma be inserted after the word "entitled," making the third clause read:

"Third: To my wife Florence Haggins Treanor as long as she is Mrs. Treanor I will devise and bequeath the remainder of my property both real and personal or mixed of which I die possessed or to which I may acquire and be entitled, to dispose of as she sees fit."

The original bill alleged that the timber on said lands had been sold to Bond Bros., Inc., for $15,000, which was an inadequate price, and asked for an injunction to restrain Bond Bros., Inc., and the executor from cutting or disposing of the timber, which was granted. But at the conclusion of the hearing the suit was dismissed as to Bond Bros., Inc., and the only question before this court is one of construction of the will.

The cause was heard on depositions and the Chancellor construed the will as contended for by the defendants.

The complainant excepted to said decree and appealed to this Court and has assigned as error the Chancellor's construction of the third item of the will.

The facts are as follows:

John B. Treanor, Sr., was 65 years of age. He died on October 19, 1938, leaving surviving him his widow, Mrs. Florence H. Treanor, six grown sons and a married daughter.

He was the owner of a one-half undivided interest in a tract of land of 3,000 acres in Cheatham County. The other one-half interest in said land was owned by his brother W. O. Treanor, who was 90 years of age and a bachelor. About 1,200 acres of the land were timber land. It appears that this was the only property the testator owned.

In the early part of 1938 he underwent an operation for tumor or cancer of the bladder.

In February, 1938, he went to the office of his son, Lawrence L.

Treanor, in Nashville, and wrote his will, in his own handwriting, and had it put in the safe by his son.

We are of the opinion that a correct interpretation of the will is reached by discarding the semicolon after the word "dispose" and inserting a comma after the word "entitled," as contended by the defendants and as held by the Chancellor.

The intention of the testator controls, in the construction or interpretation of his will (69 C. J., 52, section 1118), which is to be ascertained from the language of the will (69 C. J. 59, section 1119), every part of which must be considered in relation to every other part (Kuehle v. Zimmer, 249 Ill., 544, 94 N. E., 957; Wood v. Polk, 59 Tenn. (12 Heisk.), 220; Malone v. McGruder, 8 Tenn. Civ. App. (8 Higgins), 526, 541; Owen v. Owen, 8 Tenn. App., 246), taking into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, the relations between him and his intended beneficiaries, and the amount and nature of his estate. 69 C. J., 63, sec. 1120; Tapley v. Douglass, 113 Me., 392, 94 A., 486; Malone v. McGruder, 8 Tenn. Civ. App. (8 Higgins), 526, 541. And parol evidence is admissible, when necessary, both to place the Court in a knowledge of the condition and circumstances surrounding the testator when he executed his will, and to resolve uncertainties or ambiguities in the will as to the testator's intentions. 69 C. J., 135, sec. 1173; pp. 136-138, sec. 1174; Gannaway v. Tarpley, 41 Tenn. (1 Cold.), 572; Bunch v. Hardy, 71 Tenn. (3 Lea), 543.

Ordinarily, parol evidence is inadmissible to add to, vary, or contradict the language used in a will. 14 Ency. of Evidence, 498-500; Clark v. Clark, 70 Tenn. (2 Lea), 723; Horton v. Thompson, 3 Tenn. Ch., 575, 581; Weatherhead v. Sewell, 28 Tenn. (9 Humph.), 272, 302.

Ordinarily, declarations of a testator are inadmissible to aid in the construction of his will, except in explanation of latent ambiguities. 14 Ency. of Evidence, 500, 504, 506-7; Hennegar v. Deadrick (Tenn. Ch. App.), 54 S. W., 138; Rodgers v. Rodgers, 6 Heisk., 489, 500; Gourley v. Thompson, 2 Sneed, 387, 391.

But this rule does not preclude courts from hearing parol testimony that will enable them to put themselves as near as possible in the situation of the makers of the wills whose language is to be interpreted; such, for instance, as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts. Cannon v. Ewin, 18 Tenn. App. 388, 392, 7 S. W. (2d) 990, and cases there cited.

Parol evidence is admissible to explain a latent ambiguity in a will.

■ This rule admitting parol evidence is applied in doubtful cases because of the extreme necessity of ascertaining the real intention of the testator. Cannon v. Ewin, supra, and cases cited.

The following parol evidence as to the testator's intention was admitted without objection.

Lawrence Treanor testified that when his father was preparing to write the will he told him that he wanted to leave each of the children some remembrance and leave the rest of his estate to his wife; that he said he felt that if he devised any portion of the land to his children his wife would have a hard time making a living and it was going to be hard enough for her to make a living at best.

Mrs. Treanor testified that he told her he had made a will in the summer of 1918. She further testified:

"I was in the bed-room and he told me that he wanted me to listen and I told him all right. He said, 'Now I have made my will and I have left you everything to do the best you can with and as you see fit'; and he said, 'But you will have a hard time making a living at the best.' He said, 'Now, listen,' and I told him I was listening. He said, 'I don't want you to sell the timber behind the house now.' He said, 'You might need that later on, but sell this big tract for the best you all can do with it so you will have something to live on.'"

Joe H. Treanor, another son, testified that his father once told him: "I want you boys some day to have this place. Your mother should have it as long as she lives." He further testified that in February or March, 1938, his father told him:

"He said: 'Son, since things come up like this—I have got one or two lots and some other things and somebody is going to give a lot of trouble.' He says: 'I think your mother ought to have the place to give to who she durned please.' That was about the words he said to me."

Thomas Stanley Treanor, Sr., another son, testified that while his father was in Nashville, having medical treatment, he told him that he had made a will and had left everything to his wife.

W. O. Treanor, II, a son, testified that between the date of his father's operation and his death he told him he had made his will and had left all of his property to his wife to do with as she saw fit.

Mercer L. Treanor, son, testified that during his father's illness, four or five months before his death, he told him that he had written his will leaving all the property to his wife to do with as she saw fit, to do as she pleased with it.

Mr. Treanor had no property but a half-interest in this land, about one-half of which was timber land and the rest a farm. It is shown that he knew his wife would have to sell the timber for her support. All of his sons were grown and in business and his daughter was married.

This construction gives effect to every word in the will.

All words therein contained shall be given effect so far as possible. 69 C. J., 71, sec. 1126.

"Every word and phrase should be rendered operative and harmonized with the rest of the will, if it is possible to do so without defeating the general intention, and no portion of the language of a will may be disregarded as meaningless, if any reasonable significance is attributable thereto. . . .

"A provision in a will should not be held void for uncertainty except in the case of absolute necessity, but, if possible, should be given a meaning to carry out the testator's intent." 69 C. J., 89-91, sec. 1146.

Only in case of total and irreconcilable repugnancy should any provision of a will be rejected. 69 C. J., 111, sec. 1157.

The intention of the testator as expressed in his will cannot be controlled by the punctuation. Thompson on Construction of Wills, 154, sec. 87; Kuehle v. Zimmer, 249 Ill., 544, 94 N. E., 957; Johnston v. Gastman, 291 Ill., 516, 126 N. E., 172; Iowa City State Bank v. Pritchard, 199 Iowa, 676, 202 N. W., 512; Carroll v. Herring, 180 N. C., 369, 104 S. E., 892.

"The natural sense in which words are used, as it appears from judicial inspection, always prevails over both punctuation and capitals, which are regarded as such uncertain aids in the interpretation of written instruments as to be resorted to only when all other means fail." Kinkele v. Wilson, 151 N. Y., 269, 277, 45 N. E., 869, 871; Matter of Turner's Will, 208 N. Y., 261, 101 N. E., 905, Ann. Cas. 1914D, 245; Kern v. Kern, 293 Ill., 238, 127 N. E., 396; Thompson on Construction of Wills, 154, sec. 87.

Punctuation may be disregarded, when it serves to obscure the true meaning when gathered from all parts of the instrument. 69 C. J., 85, sec. 1143; Tapley v. Douglass, 113 Me., 392, 94 A., 486; Roe et al. v. Vingut, 117 N. Y., 204, 22 N. E., 933; Kinkele v. Wilson, 151 N. Y., 269, 45 N. E., 869; Lewisohn v. Henry, 92 App. Div., 532, 87 N. Y. S., 325.

Where, to give effect to a semi-colon in a will would import an unreasonable and unnatural intention to the testator, it will be disregarded. In re Rau's Estate, Sur. Ct., 139 N. Y. S., 525.

The Court may also supply punctuation for the purpose of clearing up an ambiguity in the will. 69 C. J., 86, sec. 1143; Lewisohn v. Henry, 92 App. Div., 532, 87 N. Y. S., 325.

An examination of the will shows that the testator was very careless about punctuation. There are no periods at ends of some of the sentences. There is only one comma in the whole will, although a number were needed. Several times a colon was incorrectly used. The only semicolon in the whole will is the one in dispute.

"Where a will is not punctuated with any degree of accuracy, or even systematically, the punctuation is of little value as an aid

to its true construction, and must otherwise be disregarded if it is in conflict with the testamentary scheme as gleaned from the provisions of the will." Lewisohn v. Henry, 92 App. Div., 532, 87 N. Y. S., 325; Holt v. Wilson, 82 Kan., 268, 108 P., 87; Johnson v. First Nat. Bank, 192 Ill., 541, 61 N. E., 379; 1 Redfield on the Law of Wills, secs. 433, 434; Reynolds v. Reynolds, 65 S. C., 390, 43 S. E., 878; 30 Am. & Eng. Enc. of Law, 672.

Mrs. Treanor testified that the testator usually had her to write his letters; that when he wrote a letter he gave it to her to punctuate for him.

There is a presumption that a testator intended to dispose of his entire estate. No presumption that a testator intended to die intestate as to any part of his estate is to be made where the testator's words, as found in the will, can fairly be construed to dispose of the whole of it. 69 C. J., 91-95, sec. 1147; Martin v. Hale, 167 Tenn., 438, 71 S. W. (2d), 211.

He made no disposition of any remainder interest in his estate. He mentioned all of his children, bequeathing to each some object of personal property of a sentimental value.

Giving effect to every word of the will, and taking into consideration the surrounding circumstances, we think, from his language, he intended to devise to Mrs. Treanor an estate during her widowhood but wanted her to be able to dispose of it if she saw fit, and the latent ambiguity is caused by his careless use of punctuation marks, which may be disregarded by the Court in construing the will. The addition of this clause has the effect of creating a fee simple title in her, and the appellant has no interest in the same. Ogilvie v. Wright, 140 Tenn., 114, 203 S. W., 753; Daly v. Daly, 142 Tenn., 242, 218 S. W., 213; Bradley v. Carnes, 94 Tenn., 27, 27 S. W., 1007, 45 Am. St. Rep., 696.

It results that we affirm the decree of the Chancellor dismissing the complainant's bill; and the costs of the cause including the costs of the appeal are decreed against John B. Treanor, Jr.

Felts and Howell, JJ., concur.