3L 543
7L 210
14L 576

F. M. BUNCH et als. v. JONES M. HARDY et als.,

AND

MARTIN B. WOOD et als. v. ROBERT L. EVANS et als.

WILL. *Construction.* Under a will written by an unlettered draftsman, by which the testator gives land equally to his sons and daughters as the specific objects of his bounty, and makes provisions which contemplate the keeping together of the property for the benefit of the sons and daughters and their children during the life of the sons and daughters, and even afterward, for the benefit of the wives of the sons, it was held that the legal title passes in trust for the benefit of the sons and daughters as long as the latter continue members of the family,

Bunch v. Hardy.

for the life of the sons and daughters, and after their death to their children, and that the title of the parents is not subject to execution sale.

## FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch.

N. SMITHSON for complainants.

W. H. McCALLUM for defendants.

COOPER, J., delivered the opinion of the court.

The rights of the parties to these two suits turn upon the construction of the will of Martin B. Wood, deceased, who died in September, 1865. At that time, as well as on the 13th of the preceding May, when the will was executed, the testator had four sons and four daughters living, a grandson, the son of a deceased son, and another grandson, the son of a deceased daughter. The living daughters were then married and had children, and neither daughter, it seems, has had a child since the testator's death. Three of the living sons were then married, two having children and the third one child, and all have since had other children born unto them. Nancy E. Hardy, one of the daughters, had six children, one of whom, Mary L., intermarried with complainant, F. M. Bunch, and another, Virginia, intermarried with complainant, David A. Gordon.

The first of these bills was filed by Bunch and wife and Gordon and wife, claiming that each of Nancy E. Hardy's children took, equally with their

mother, a share in the land devised to the mother under her father's will. The second bill is filed by the children of George A. Wood, one of the sons of the testator, claiming in like manner an equal interest in the land devised to their father, and seeking to enjoin Evans and Fry, as creditors of the father, from taking possession of the land under a purchase of the father's interest at execution sale.

"Being desirous," says the testator in his will, "to arrange and secure to all my children, after my death, an equitable and suitable division and securement of all my property and effects, do hereby ordain as follows." After providing for the payment of debts, and directing the terms on which his personal property is to be sold by his executor, the testator asks the county court to appoint five citizens, land owners, "to examine all my lands that I may die possessed of, and proceed to examine and divide the whole amount as near equal in value as possible in ten shares or parcels, numbering from one to ten, so that all my children, or their representatives hereafter named, shall share and share alike in value, as follows: Mary A. C. Rutledge, wife of Dr. J. B. Rutledge, deceased, and her children, shall have one share. Margaret K. Goff, wife of John Goff, and her children, shall have one share; Louisa T. Ham, wife of James Ham, and her children, shall have one share; my grandson, Robert Martin McCorister, son of Eliza McCorister, deceased, shall have one share; Nancy E. Hardy, wife of James M. Hardy, and her children, shall have one share; Robert G. Wood and his children shall have

one share; my grandson, Wallace R. Wood, son of John M. Wood, deceased, shall have one share; Geo. A. Wood and his children shall have one share; Thos. M. Wood and his children shall have one share, and David R. Wood shall have one share, being in all ten heirs."

The testator then makes provision for equalizing the shares of the devisees in the land by payment of money, and requiring them to account for advancements specified, "so far as for all to be equal in the division of lands, including the amount each one of the children has heretofore received from me." He adds: "My executor will, as soon as he collects and closes up the money means of said estate, pay it over equally to each legatee, or legally authorized representative, so as to secure the proper division equally of my entire estate. Furthermore, it is my will especially that Margaret K. Goff and her children shall receive and have sole control and title to all of their interest in my estate, free from the claims, management or control of her husband, John Goff; and that Louisa T. Ham and her children shall receive and have control and title to all their interest in my estate, free from the claim, management or control of her husband, James Ham; and that Nancy E. Hardy and her children shall receive and have sole control and title to all their interest in my estate, free from the claim, management or control of her husband, James M. Hardy; and that the county court appoint a suitable person to take charge of and control all the interest in my estate going to Robert G. Wood,

and appropriate the increase, or so much of it as may be necessary for the support of himself and family, and in the event of his death, his wife, Sarah A. Wood, shall have the right to remain on his land free of charge until the youngest child may become of age; and that Henrietta M. Wood, wife of John M. Wood, deceased, shall have the right to remain on the land I willed my grandson, Wallace R. Wood, her infant son, until he becomes of age, free of charge. In the event of the death of George A. Wood, his wife, E. A. Wood, shall have the right to live on his land, free of charge, until his youngest child becomes of age. In the event of the death of Thomas M. Wood, his wife, Mary Jane Wood, shall have the right to live on his land until his youngest child becomes of age." The will then mentions in detail the testator's land, and appoints an executor.

Parol evidence is admissible to apply, but not to explain the terms of a written instrument. *Snodgrass* v. *Ward*, 3 Hay., 40. The state of facts may, therefore, be proved under which a will was made, the situation of the testator's property, the members of his family, and such other facts as will enable the court to place itself as near as possible in the situation of the person whose language is to be interpreted. *Gannaway* v. *Tarpley*, 1 Col., 572. For this purpose the testimony showing the number of the testator's children and grandchildren at the date of executing the will, and at his death, and their condition in life, was competent, and the chancellor erred in excluding it. Whether the evidence touching the person by

whom the will was written, and his vocation, was properly admitted is immaterial. The will shows on its face the hand of an unskillful draftsman—not the work of a lawyer. Its meaning must be arrived at from its general scope, and by giving the words used their ordinary acceptation, rather than by technical rules.

Obviously, his eight living children and his two grandchildren, representing each a deceased child, are the main objects of the testator's bounty. He has, however, in every instance where one of his sons or daughters had, at the date of the will, a child or children, included such child or children in the devise to the parent. His language is, "Nancy E. Hardy and her children shall have one share, George A. Wood and his children shall have one share." The language, taken by itself, where there are children then in existence, has been generally held to give the property devised equally to the parent and children. *Gordon* v. *Weildon*, 11 Beav., 170; *Belote* v. *White*, 2 Head, 703; *Gannaway* v. *Tarpley*, 1 Col., 572; *DeWitte* v. *DeWitte*, 11 Sim., 41; so in the case of deeds, *Lillard* v. *Rucker*, 9 Yer., 64; *Barnes* v. *Vickers*, 3 Baxter, 370; *Arringion* v. *Roper*, 3 Tenn. Ch., 574. But even in such a gift by will a very slight indication of intention that the children should not take jointly with the mother, is sufficient to enable the court to decree a life estate to the mother, with remainder to her children. Per Lord Cottenham in *Crockett* v. *Crockett*, 2 Ph., 553, 556. The reason is, that children born after the death of the testator may

otherwise be cut off. *Jeffery* v. *De Vitre,* 24 Beav., 296; *Morse* v. *Morse,* 2 Sim., 485; *French* v. *French,* 11 Sim., 257. Such "indication of intention" has been found in the majority of cases in this State. *Harris* v. *Alderson,* 4 Sneed, 250; *Moore* v. *Simmons,* 2 Head, 546; *Turner* v. *Ivie,* 5 Heis., 222; *Hix* v. *Gosling,* 1 Lea, 568; *Squires* v. *Old,* 7 Hum., 454; *McCall* v. *McCall,* 1 Tenn. Ch., 504. In some of those cases the "indication of intention" was clear enough, and in others "very slight." Precisely what will be a sufficient indication, it may be difficult to define.

Undoubtedly, where the property is given to a parent for the maintenance of the parent and children, the intention is that the parent shall receive the income or profits, and maintain the children so long as they form a part of the family; and when the children are forisfamiliated, as by departure from the parental roof, they lose the right to maintenance. 2 Spence Eq., 461; *Harris* v. *Alderson,* 4 Sneed, 256. In the case just cited, the fact that the will, in the first instance, gave the testator's daughter a specific share of the estate, and made it subject to a trust for the "daughter and her children" only by a subsequent clause, was held sufficient to take the devise out of the rule. The same circumstance controlled the decision in *Moore* v. *Simmons,* 2 Head, 546, while the learned judge who delivers the opinion also lays stress upon the point that if any interest passed to the children it must be a present one, and as such, might be demanded by a guardian, or by any child

on coming of age or marrying, with an account, perhaps, thus defeating the prominent object of keeping the property together for the support of the family as a unit.    In both of these cases, however, as well as in *Turner* v. *Ivie,* 5 Heis., 222, the general intent, as gathered from the whole will, was taken into consideration.

In the will before us, the testator starts out with saying that "having been prospered and blessed by a kind Providence with a family of children and worldly means and property of value," he wishes to secure to "all my children" an equitable division, and directs a division of his lands into ten shares, as nearly equal in value as possible, "so that all my children or their representatives hereafter named" shall share and share alike.    The children are afterward named, and the two grandchildren, the representatives of their parents, showing definitely to whom this clause refers.    So when he comes to speak of the division of the surplus personalty, he directs it to be paid equally "to each legatee or legally authorized representative." These provisions of the will leave no doubt that the testator's children, and his two grandchildren as representing their parents, were the primary objects of his bounty.

The children of the living sons and daughters are not mentioned in these clauses.    They are only connected with their parents in the specification of the shares into which the land is to be divided.    The exclusion of the marital right in the case of the daughters and their children, contemplates a separate

estate in the daughters of the entire share devised to each daughter. There is a provision for the wives of the testator's sons, if they survive their husbands, that they shall have a right to remain on the land allotted to the husband until the youngest child comes of age, which seems to contemplate the ownership of the entire lands by the children upon the death of the father, a result not attainable except by giving to the parent only a life estate.

And lastly, the inartificial manner in which the whole will is drafted does not allow us to give the words on which the claim of the children rests for a present division their technical sense. The general scope of the will, with the situation and pecuniary condition of the sons-in-law, and the modest share of land allotted to each child, lead to the conclusion, as strongly as in any of the cases cited, that the intention of the testator was to give his daughter, Nancy E. Hardy, and his son, George A. Wood, the only two shares now in controversy, a life estate in the land devised to each, subject to a trust for the maintenance of their children while members of the family, with remainder to their children respectively living at the death of the testator, or born during the continuance of the life estate. Land thus held by the parent, so long as the trust continues active, that is, while there are children members of the family, cannot be reached by execution at law, the legal title being in the parent as trustee, and his interest only equitable. The result would be the same if the legal title be in the parent and children subject to the trust.

*Markham* v. *Guerrent,* 4 Leigh, 279; *Hill* v. *McRea,* 37 Ala., 175; *Johnson* v. *Hurley,* 3 Tenn. Ch., 258; *Porter* v. *Greer,* 1 Col., 564.

There is no error in the Chancellor's decrees, and they will be affirmed with costs.