MRS. GEORGE GREEN, Administratrix, Estate of
GEORGE ALLEN LANIER, Complainant, v.
ELIZABETH EZELL LANIER, Appellant, and W. C.
LANIER and MARY C. LANIER, Appellees, Defendants.
—456 S.W. 2d 345.

Middle Section. January 2, 1970.

Certiorari Denied by Supreme Court June 1, 1970.

Tyler Berry, Berry & Berry, Franklin, for complainant.

Allen Shoffner, Shelbyville, Mabry Covington, Jr., Franklin, James R. Sasser, Goodpasture, Carpenter, Woods & Courtney, Nashville, for defendants.

TODD, J. This is a suit by Mrs. George Green, administratrix with the will annexed of George Allen Lanier, deceased, for an interpretation of the will of the deceased. From a decree favorable to the brother and sister of deceased, the widow has appealed.

The provision of the will requiring interpretation is as follows:

"ITEM II. I give, devise, and bequeath to my wife, ELIZABETH EZELL LANIER, ½ (one-half) of all property, except my bank account, seized and possessed, of which I may be equitable owner at my death, to be hers absolute, whether said property be real, personal or mixed.

"ITEM III. The other one-half, and all my bank account, to be divided equally among W. C. Lanier and Mary C. Lanier."

The property of the deceased which would be affected by an interpretation of the will is as follows:

1. Williamson Co. Bank—Checking Acct.    $ 2,303.63

2. Williamson Co. Bank—Savings Acct.        124.22

3. First Federal Savings & Loan Assn.
   Savings Acct.                                    12,336.65

4. First Franklin Federal Savings & Loan
   Assn.—Savings Acct.                              15,047.71

It is the insistence of the appellant widow that the words "except my bank account" in Item II, above, refer to the first named asset, the checking account, and that she is entitled to one half the remaining assets under Item III, above.

It is the insistence of appellees, brother and sister, that the words "my bank account" in both Item II and Item III refer to all of the above listed assets, and that they are entitled to all of same without participation of the widow.

The chancellor heard oral evidence as to the circumstances and intentions of the testator and decreed as follows:

"The Court is of the opinion and so ORDERS, ADJUDGES and DECREES that Testator by the use of the phrases 'except my bank account' and 'all my bank account' intended to dispose of and did dispose of all of his money on deposit in the various banks at the date of his death. That it was his intention to divide equally between his brother, W. C. Lanier and his sister, Mary C. Lanier, all of such bank accounts."

The assignments of error complain of the allowance of pleadings and evidence dehors the written will, the failure to consider other evidence dehors the will, and the conclusions of the chancellor, cited above.

A consideration of all the assignments of error and review of the action of the court generally will be facili-

tated by a recitation of the uncontroverted facts forming the background of this dispute.

George Allen Lanier and his wife, Elizabeth Ezell Lanier, were a childless couple who lived together on a farm in Williamson County for sixty years. In their declining years, they utilized the services of a neighbor, a Mr. George Green, to handle some of their business affairs, and Mr. Green was named as executor in the will under discussion.

Later, Mrs. George Green, the complainant herein, became attorney-in-fact for both of the old people. The record does not disclose, but presumably this was because of the death or disability of Mr. Green.

The old people had a singular financial relationship, at least in their latter years, in that they carefully and equally divided their cash funds, each taking one half and depositing it to his or her separate credit or otherwise disposing of it as he or she saw fit. Just when this arrangement began is not disclosed by the record.

The deceased had discussed with at least one relative the matter of making a will dividing his property equally between his wife and his relatives, and told said relative that "Mr. Berry said it would not hold up."

The will of deceased is typewritten and witnessed by two officers of the Williamson County Bank, of Franklin, Tennessee. Neither of these gentlemen testified in this case. The will is dated July 15, 1965. On that date, the records show the following credits to deceased:

Williamson County Bank—Checking Account $1,097.81

Williamson County Bank—Savings Account     114.80

First Franklin Federal Savings & Loan
    Assn. (Franklin)               6,368.49

First Federal Savings & Loan Assn.
    (Nashville)                  4,000.00

The account records show that the checking account was used frequently for deposits and withdrawals; that the savings account was static except for interest accruals; that the First Franklin Federal Savings and Loan Association account was somewhat active, receiving seven deposits and no withdrawals in the first seven months of 1965 preceding the execution of the will; and that the First Federal Savings and Loan Association (Nashville) account was completely inactive, representing an initial deposit of $4,000.00 in 1960, and the withdrawal and transfer of same to First Franklin Savings and Loan Association in August 1965, shortly after the execution of the will.

In May, 1967, G. A. Lanier and wife Lizzie Ezell Lanier, sold their farm to Thomas L. McCall for a consideration of $25,000.00. One half of the proceeds was paid to the wife and placed to her credit in a savings and loan association. The other half of the proceeds was paid to G. A. Lanier and placed to his credit in First Federal Savings and Loan Association in Nashville. This account shows no entry except interest until the death of deceased.

As a result of the foregoing transactions and other minor deposits and withdrawals, the status of the affairs of deceased with the said bank and savings and loan associations at the time of his death was as set out heretofore.

Although no issue is made in this cause concerning same, it is noteworthy that the funds at the said savings and loan associations and in said bank were transferred to the checking account of the estate in August 1967. The record of the checking account of the estate discloses a balance of $30,962.43 on June 4, 1968, which presumably remains on deposit without interest pending this appeal.

Although not a material issue in this cause, the matter of dissent was discussed by counsel at the trial and mentioned in one of the briefs. One counsel thought the widow had a year to dissent. The solicitor for the complainant administratrix thought she had only nine months to dissent and stated as a fact that no dissent had been filed.

Section 31-605 T.C.A. provides that the widow may dissent within nine months after probate of the will. The will in this case was probated on August 3, 1967. Nine months thereafter was May 3, 1968. The original bill was filed herein on July 9, 1968.

Section 31-609 T.C.A. provides that in event of litigation, the widow shall have an additional year within which to dissent, or such additional time as the court may allow. There is no evidence in this record that a dissent was filed or extension granted at any time.

Section 31-607 provides that upon request of the widow the executor or administrator shall disclose to her the conditions of the estate to enable her to act as her interest may require. There is no evidence in this record that the widow ever made such a request. Her attorney-in-fact, Mrs. George Green, was and is also the administratrix and complainant herein.

With the foregoing background considerations, the fundamental and determinative issue must now be re-

solved, that is, does the wording of the will, "my bank account" effectively exclude the widow from participation in the distribution of the proceeds of any of the funds of deceased listed above.

The appellees insist that there is sufficient uncertainty in the meaning of the will to admit oral testimony of the intention of the testator and that such testimony in this record conclusively shows the intent of the testator to exclude the widow from all cash funds of his estate.

Appellees cite Treanor v. Treanor, 25 Tenn.App. 133, 152 S.W.2d 1038 (1941) wherein this Court stated the issue to be one of punctuation, and the punctuation was corrected to give the words of the will a meaning consistent with the orally expressed intention of the testator. The will was clearly ambiguous, and only a change of punctuation or deletion of words would give meaning to it. This Court chose to change punctuation, rather than to delete words. In so doing, this Court said:

"We are of the opinion that a correct interpretation of the will is reached by discarding the semicolon after the word 'dispose' and inserting a comma after the word 'entitled,' as contended by the defendants and as held by the Chancellor.

"[1-3] The intention of the testator controls, in the construction or interpretation of his will * * * which is to be ascertained from the language of the will * * * every part of which must be considered in relation to every other part * * * taking into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, the relations between him and his intended beneficiaries, and the amount and nature of his estate.

* * * And parol evidence is admissible, when necessary, both to place the Court in a knowledge of the condition and circumstances surrounding the testator when he executed his will, and to resolve uncertainties or ambiguities in the will as to the testator's intentions. (citing authorities)

"[4] Ordinarily, parol evidence is inadmissible to add to, vary, or contradict the language used in a will. (citing authorities)

"[5] Ordinarily, declarations of a testator are inadmissible to aid in the construction of his will, except in explanation of latent ambiguities. (citing authorities)

"But this rule does not preclude courts from hearing parol testimony that will enable them to put themselves as near as possible in the situation of the makers of the wills whose language is to be interpreted; such, for instance, as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts. (citing authorities)

"[6] Parol evidence is admissible to explain a latent ambiguity in a will.

\* \* \* \* \* \*

"This construction gives effect to every word in the will." 25 Tenn.App., pp. 137, 138, 152 S.W.2d, pp. 1040, 1041.

It is to be noted that the parol evidence received by the court in *Treanor* gave effect to every word of the will, and did not alter, contradict, add to or modify the will.

In Prichard, Wills and Estates, Vol 1, sec. 400, p. 359, is found the following.

*Sec. 400 'Extrinsic evidence generally inadmissible.*

It is a general rule that extrinsic evidence cannot be heard to explain, add to, take from, modify or contradict the contents of a will, even though the consequence of the rejection of the evidence may be the total or partial failure of the testator's intended dispositions; but the will must be construed upon its face without resorting to extraneous methods of explanation to give it point. Any other rule would place it practically within the power of others to make a new will for the testator, so as to meet the convenience and wishes of those who might claim to take under it.''

Appellees also cite Cannon v. Ewin, 18 Tenn.App. 388, 77 S.W.2d 990 (1934), wherein there was an unequivocal bequest of $7,000.00, but the executor claimed an offset for a note allegedly due the estate from the beneficiary. The beneficiary claimed that the note and indebtedness had been cancelled by testator before her death and that the bequest was intended to be in addition to and free of the said cancelled debt. Parol evidence was heard, and the issue resolved in favor of the beneficiary, however this Court said:

"While this intention of the testator is to be gathered from what is found within the four corners, within the lids of the instrument; that is, from the particular words used in the will, their context, and the general scope and purpose of the instrument, (citing authorities) yet this rule does not preclude courts from hearing parol testimony that will enable them to put themselves as near as possible in the situation of

the makers of the wills whose language is to be interpreted; such, for instance, as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts. (citing authorities) We need only observe, in this connection, that the testator's intention, as disclosed by the language of his will when read in the light of the facts and circumstances surrounding him at the time of its execution, will not be set aside or disregarded by proof aliunde, showing, however, clearly a different intention on the part of the testator.

"This rule admitting parol evidence for this purpose was specified as adopted and applied in many of our cases, although there is also a general rule that parol evidence is inadmissible to contradict, add to, or explain a will where there is no ambiguity on its face. (citing authorities) A strict rule is applied in the interpretation of a will which on its face discloses the intention of the testator; that the intention that controls in the construction of a will is that intention which is expressed in the will or fairly inferable from its terms; that the court will not give effect to an intention, though morally certain that it existed in the testator's mind, unless it has found expression in his will. This rule was declared and applied in Fox and Wheatley v. Fox, 102 Tenn. 77, 50 S.W. 765, 767, the court saying:

'The question is not what the testator intended in his mind, but what is the meaning of his words and his intention, as shown by them.'

"In such case the only question is what the language shows to have been the testator's intention. Parol

evidence is simply inadmissible to show a different intention from that expressed in the will. This doctrine was declared in the recent case of Martin v. Hale, 167 Tenn. 438, 71 S.W.2d 211, in the opinion by Mr. Justice Chambliss. It may be harmonized with the admission of extrinsic evidence in other cases upon the theory that in those cases the intention as to the question involved is not shown in the will. It cannot be doubted that the will of Mrs. Allen shows on its face a clear intention to give to Mr. Ewin the sum of $7,000. The question whether or not she intended to release the debt by canceling the note arises from extrinsic evidence produced by the executor, who sued by cross-bill to recover upon the note. * * *'' 18 Tenn.App., pp. 392, 393, 77 S.W.2d, pp. 992, 993.

Appellees also cite Gannaway v. Tarpley, 41 Tenn. 572 (1860) which was a dispute between children and their father over title to a certain bequest which the will of a grandfather had listed as ''received'' by the father. The court considered facts and circumstances to assist in interpreting the word ''received'' as relating to the resulting title. The evidence did not alter, contradict, add to or modify the will.

Appellees cite Bunch v. Hardy, 71 Tenn. 543 (1879) wherein the testator divided his estate into ten equal parts for the benefit of his eight living children and the representatives of his two deceased children. The Supreme Court said:

''Parol evidence is admissible to apply, but not to explain the terms of a written instrument. Snodgrass v. Ward, 3 Hay. [4 Tenn.] 40. The state of facts may, therefore, be proved under which a will was made, the

situation of the testator's property, the members of his family, and such other facts as will enable the court to place itself as near as possible in the situation of the person whose language is to be interpreted. Gannaway v. Tarpley, 1 Col. [41 Tenn.]572. For this purpose the testimony showing the number of the testator's children and grandchildren at the date of executing the will, and at his death, and their condition in life, was competent, and the chancellor erred in excluding it. * * *'' 71 Tenn., p. 547 (pp. 440, 441)

No evidence was admitted or considered to alter, contradict, add to or modify the will.

Appellees cite T.C.A. sec. 27-303 and a number of cases in support of a presumption of correctness of the chancellor's decree unless the evidence preponderates otherwise. None of the cited cases involves the interpretation of a will or other written instrument except Fariss v. Bry-Block Co., 208 Tenn. 482, 346 S.W.2d 705 (1961), in which the only reference to T.C.A. sec. 27-303 is as follows:

"The Court of Appeals was also of opinion that the Chancellor was in error in finding that the will was drafted by a lawyer, because the identity of the draftsman was not shown by the evidence; * * *''

\*     \*     \*     \*     \*     \*

"* * * A casual inspection of this will discloses that it was drawn by a draftsman who was highly skilled in the use of technical legal language and in the meaning thereof. The Chancellor concluded that it was drawn by a lawyer, but the Court of Appeals reversed on the point because it said there was no evidence to support

such finding, apparently relying upon the reasons stated, supra. We think that the will was drawn either by a lawyer, or by one who missed a golden opportunity to have been a lawyer and that the Court of Appeals was not warranted in reversing the Chancellor on this point because the evidence does not preponderate against the correctness of the Chancellor's findings. T.C.A. sec. 27-303.'' 208 Tenn. pp. 486, 487, 346 S.W.2d pp. 706, 707.

The presumption of correctness was applied only to a minor finding of fact, and not the conclusion of law.

In McFadden v. Blair, 42 Tenn.App. 434, 304 S.W.2d 93 (1956), a will case, this Court said:

"[3] Since the evidence in this cause is undisputed, and all questions to be decided are, therefore, questions of law, we think that the provisions of Sec. 27-303, Tenn.Code Ann., which provides that the trial of this case in this Court shall be de novo with a presumption that the Chancellor's decree is correct unless the evidence preponderates against his ruling, is not applicable.''

The general rule has been stated in Fariss v. Bry-Block Company, supra, and countless other authorities, that the intention of the testator prevails, but such intention must be gathered from within the four corners of the will, as elucidated by the state of facts under which the will was made.

Statements of the testator which do not comport with the intentions stated in the will are not admissible. To rule otherwise would be to emasculate our statutes regulating the formality of testamentary instruments.

What, then, was the state of facts at the time testator executed his will on July 15, 1965? He was living with his wife of many years on their farm. They kept their money separate. His was at his bank, Williamson County Bank, in two accounts, checking and savings, and in two institutions known as First Federal Savings and Loan Association, Nashville, and First Franklin Federal Savings and Loan Association. His will, executed on that date referred to "my bank account" and was witnessed by two officers of testator's bank. On that date, what did the written words, "my bank account," mean?

First, what did the words mean to testator? There is not a word of testimony in this record as to the use of the words "bank," or "bank account" by the testator on any other occasion. There is no evidence that he treated his various funds on deposit as being interchangeable. If he had ever referred to a savings and loan association as "a bank," or "the bank," or had referred to savings and loan associations and banks under the collective term "banks," or if testator had ever referred to the savings and loan accounts as "bank accounts," then the chancellor and this Court would be justified in employing the words in the meaning with which testator customarily employed them. There is no basis in the record for such employment. There being no evidence that testator used the word "bank" with a special meaning, the courts must interpret the word in its ordinary meaning.

If testator in his will had referred to his funds as "my cash," or "my funds," or "my deposits," or my "funds on deposit," there would be little difficulty in comprehending all of the above assets in such designation; but such designation was not used. There being no evidence to support such a ruling, it would not be proper for this

Court to reword testator's will to substitute for "my bank account" the words, "my deposits in any bank or savings and loan association."

There is no evidence in this record to justify a finding of fact that a savings and loan association is a bank, or the same as a bank. There is no evidence to show what kind of institutions the First Federal Savings and Loan Association or the First Franklin Savings and Loan Association are. Exhibited to the record are photostatic copies of what appear to the pages of passbooks, containing the name, address and signature of deceased with tabular columns for "date," "credits," "earnings interest" and "balance," and the name of the association. There is no other evidence of what else appears elsewhere in the pass-book, or whatever it is. There is no evidence of the terms, conditions or limitations of "withdrawals" or "credits." Thus this Court cannot ascertain from the exhibits the exact nature of the savings and loan associations or the terms upon which they held funds of testator.

It might be plausibly urged that the chancellor and this Court ought to take judicial notice of the nature of savings and loan associations and deposits or investments therein. The chancellor doubtless had some personal information on this subject, and the members of this Court are not entirely ignorant of such matters. Personal information is not judicial notice, however; and this is especially true when application of such information would be based upon speculation and conjecture because of failure of the record to satisfactorily identify the object of desired judicial notice.

It might be plausibly urged that the nature of savings and loan associations could be ascertained by resort to

statutory law. Tennessee Code Annotated, Title 45, contains separate chapters devoted to banks, building and loan associations, credit unions, and like institutions, but nothing is found therein to support a judicial holding that an institution bearing the name "First Federal Savings and Loan Association" is a bank. Equally lacking in helpful provisions is the Code of the United States, Title 12, with its various chapters.

In Cannon v. Apperson, 82 Tenn. 553 (1885) our Supreme Court said:

"Banks are financial institutions regulated by law, one branch of whose business is to receive money on deposit subject to check, the money deposited becoming their property, to be used subject to those rules of law or custom which limit the amount used so that a sufficient fund may always be on hand to meet the checks of the depositors. * * *" 82 Tenn. p. 583 (p. 458)

From the name "Williamson County Bank," and the evidence that it offered both checking and savings services, it must be assumed that "Williamson County Bank" was a bank within the meaning and intent of testator's will. This being true, it requires no strain of the imagination, or of the words of the will, to interpret the words, "my bank account," to mean all deposits at "my bank," whether designated as checking account or savings account.

If there should be any doubt that a checking account and a savings account are potentially one account, such doubt would be quickly resolved in event of an overdraft in the checking account and application of savings on deposit to balance the overdraft.

This Court has supplemented the diligence of counsel in the search for authorities which would conclusively resolve the question presented by this appeal. As previously suggested, the absence of certain evidence from the record has been a handicap. Another disadvantage is that there is no strong line of authorities to support the contention of either appellant or appellees.

Volume 5, Words and Phrases, pp. 157-173 contains a considerable number of annotations under the subjects of "Banks" and "Bank Accounts." Cases are cited therein wherein various financial institutions have been held to be, or not to be, banks for various purposes, but no clear trend of authority is to be derived from a study of said cases.

In 96 C.J.S. Wills sec. 779, pp. 189 and 190 is found an article on "Money in Banks," but neither the text nor the cases cited in footnotes speak decisively on the present issue.

In 57 Am.Jur, Wills, sec. 1091, pp. 700, 701 is found text and notes on the same subject without decisive effect.

Phillips' Prichard on Wills and Estates, quoted supra, contains considerable text on interpretation of wills, but none directly in point.

In 93 A.L.R. at pages 530 ff and 94 A.L.R. at pages 165 ff are found articles regarding bequests of money, money in hand, money in bank, etc. without offering satisfactory guidance in this case.

As a result of the analysis of this record in the light of authorities studied, it has been determined, as was determined in Burton v. Kinney, 191 Tenn. 1, 231 S.W.2d 356 (1950) that:

*"(3,4)* Precedents are of little aid in deciding cases involving the testator's intention. In Rood on Wills, 2d Ed., Section 413, it is said: 'If by the use of plain and unambiguous language, he has made his meaning clear and certain, his will expounds itself, and all the court can do is to give it effect. *All doubts must be resolved in favor of his having meant just what he said.* The courts have no right in such cases to resort to a fanciful or conjectural construction, grounded on the circumstances of his property, his family, or himself.' (Emphasis supplied)"

and, as stated in Davis v. Price, 189 Tenn. 555, 226 S.W. 2d 290 (1950) that:

"This Court may not speculate concerning testator's intention, Hastings v. U. S., 6 Cir., 133 F.2d 218, which is to be derived from the words of the will itself. Smith v. Bell, 6 Pet. 68, 31 U.S. 68, 8 L.Ed. 322." 189 Tenn. at 561, 226 S.W.2d at 293.

■ This Court therefore holds that the words, "my bank account," wherever used in the will of George Allen Lanier, refer to and designate all of the funds on deposit to his credit at his death at the Williamson County Bank, of Franklin, Tennessee.

Under the record before this Court, the funds due deceased from First Federal Savings and Loan Association, Nashville, and First Franklin Federal Savings and Loan Association, Franklin, are not included in the designation of "my bank account," and one half of same is distributable to the widow under Item II of the will.

This disposition could not be grossly unjust to either appellant or appellees. The resulting distribution to the

widow will not greatly exceed the amount she would have received had she been properly informed of the facts and advised of the law and, as a result, preserved her rights to dissent and had in fact dissented following an adverse decision in this case.

The decree of the chancellor is reversed, a decree will be entered in accordance with this opinion, and the cause will be remanded for further proceedings consistent herewith. The costs of this appeal are taxed against the administratrix, to be paid out of the assets of the estate.

Reversed and remanded.

Shriver, P. J., (M.S.), and Puryear, J., concur.