IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2013 Session

## DONNA PERDUE v. ESTATE OF DANIEL JACKSON, ET AL.

**Direct Appeal from the Chancery Court for Hardeman County**
**No. 17349      Martha B. Brasfield, Chancellor**

---

**No. W2012-02710-COA-R3-CV - Filed June 12, 2013**

---

The trial court granted summary judgment in this declaratory judgment action, finding that the will at issue was unambiguous. Having determined that the will at issue contains a latent ambiguity that must be resolved through the use of extrinsic evidence, we reverse the grant of summary judgment and remand for further proceedings. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Terry Abernathy, Selmer, Tennessee, for the appellant, Donna Perdue.

Randy C. Camp, Jackson, Tennessee, for the appellees, Estate of Daniel Jackson, Deceased, by and through its Administratrix, C.T.A. Connie Higgs and Connie Higgs, Individually.

### OPINION

### I. Background

Testator Daniel Jackson died in 2011 leaving a holographic will, which stated: "All property and houses to be left to Connie Higgs - Phyllis daughter[1] - Daniel Stepdaughter to be divided as she sees fit among kids . . . ." The will further provided that all contents of the house, with certain exceptions, were to go to Ms. Higgs. The will also provided that: "Nothing is to be sold off or auction[ed;] what [Ms. Higgs and] Frankie [and] Boys don't

---

[1] It is undisputed that Phyllis was the wife of Mr. Jackson.

want to be given to Sue [and] Debra.[2] Finally, the will stated that "[t]his was Phyllis[']
wishes." The holographic will was admitted to probate on March 23, 2011.

On June 30, 2011, Appellant Donna Perdue filed a claim against Mr. Jackson's Estate
in the Hardeman County Chancery Court alleging that she was the biological child of Mr.
Jackson and asserting that she was entitled to unpaid child support. On July 15, 2011, Ms.
Perdue filed a separate complaint for a Declaratory Judgment against the Estate of Mr.
Jackson, and Connie Higgs, as Administratrix of Mr. Jackson's estate and individually
(collectively, "Appellees"),[3] seeking to have the will declared "too uncertain, too ambiguous,
and too vague to constitute a valid testamentary disposition and to therefore adjudicate
Daniel Jackson died intestate." The Declaratory Judgment complaint is the action at issue in
this appeal. In Ms. Perdue's Declaratory Judgment complaint, she asserted that the phrase
"among kids" is too vague to constitute an enforceable testamentary disposition because it
is patently unclear which kids Mr. Jackson is referring to. On January 9, 2012, the trial court
entered an order denying Ms. Perdue's separate claim for child support and refusing to name
Mr. Jackson as Mr. Perdue's legal father on the basis of the expiration of the statute of
limitations. Ms. Perdue filed a timely motion to alter or amend asserting that she was not
seeking to have Mr. Jackson named her legal father, but merely sought an adjudication that
Mr. Jackson was her biological father, based on DNA testing performed by Ms. Perdue, in
order to pursue her Declaratory Judgment claim. Subsequently on April 4, 2012, the trial
court entered an order in which the parties stipulated that Ms. Perdue was the biological
daughter of Mr. Jackson. The trial court, however, did not amend its ruling dismissing Ms.
Perdue's claim for unpaid child support. The claim for unpaid child support is not at issue
on appeal.

On September 17, 2012, Appellees filed a Motion for Summary Judgment in the
Declaratory Judgment action, arguing that Ms. Perdue had no standing to seek declaratory
relief in this action and that the will was clear and unambiguous in that the term "kids"
referred to the children of Ms. Higgs. The trial court heard oral argument on the Motion for
Summary Judgment on October 3, 2012. The trial court made an oral ruling at the conclusion
of the argument. The trial court ruled that in order to find a patent ambiguity, the court could
not consider any parole evidence. According to the trial court, considering only the four

---

[2] From the record, it appears that there is no conflict as to who Mr. Jackson is referring to in this
portion of the will.

[3] Ms. Perdue's complaint for a Declaratory Judgment also named Frankie Pittman, Hunter Pittman,
Nicholas Pittman, Ashley Higgs, and Allie Higgs as party-defendants. These defendants did not participate
in any meaningful way in the trial court proceedings and were voluntarily nonsuited from the case by order
of January 31, 2013. Accordingly, these defendants are not parties to this appeal, nor is discussion of them
necessary to resolve the issues presented in this case.

corners of the will, Mr. Jackson clearly and unambiguously intended the word "kids" to refer to Connie Higgs' children, not Mr. Jackson's own children. Thus, the trial court concluded that the portion of the holographic will at issue contained neither a patent, nor a latent ambiguity and could be enforced without the need for extrinsic evidence. Specifically, the trial court stated:

> You look at the will and you know he meant someone. There was a group of people he called kids. It's plural. It's not singular . . . .
>
> *   *   *
>
> When you look at this will, there's several things that come out to you. Connie Higgs is Phyllis' daughter and Mr. Jackson's stepdaughter. She is mentioned on several occasions. We know that she in the first paragraph is Connie.
> She sees fit among kids. The only person that he mentions in that paragraph is Connie Higgs. He defines who she is. He says exactly who she is.
> It's her kids. . . . . He wants what Phyllis wishes, he wants it to go to Connie, she does as she sees fit among kids. They're her kids unless they're not—unless she doesn't have kids plural, then we have a problem, but otherwise kids are Connie's children and that's what I am going to rule.
> I find I can look at the four corners of this will and tell what he's talking about because . . . he's doing this for himself and Phyllis. He says again he wants it to be Phyllis, he says who Connie is, and the only person that paragraph that he's talking about is Connie.  [H]e means Connie's children. Connie's kids.

Accordingly, the trial court granted Appellees' Motion for Summary Judgment. The trial court entered an order granting summary judgment in favor of Appellee on February 4, 2013. The trial court entered additional orders on January 31, 2013 and February 4, 2013, disposing of the remaining issues in the case. Ms. Perdue timely appealed.

## II. Analysis

The sole issue presented in this case is whether the trial court erred in granting Appellees' Motion for Summary Judgment on the issue of the construction of Mr. Jackson's will. A trial court's decision to grant a Motion for Summary Judgment presents a question

-3-

of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells,*** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. ***Abshure v. Methodist Healthcare–Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010).

When a Motion for Summary Judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Summary Judgment Motion filed by Appellees is governed by the summary judgment standard contained in Tennessee Code Annotated 20-16-101.[4] Based on this statute, when the moving party is not the party that has the burden at trial, the moving party may accomplish summary judgment by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating " to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code. Ann. 20-16-101.

The trial court in this case granted summary judgment after concluding that no patent or latent ambiguity existed and that the holographic will unambiguously provided that Ms. Higgs' was to divide the property at issue among her own children. "The construction of a will is a question of law for the court." ***Briggs v. Briggs***, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997) (citing ***Presley v. Hanks***, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)). "The purpose of a suit to construe a will is to ascertain and give effect to the testator's intention." ***In re Estate of Eden***, 99 S.W.3d 82, 87 (Tenn. Ct. App. 1995) (citations omitted). According to this Court:

> "It is the absolute right of the testator to direct the disposition of his property and the Court's [sic] are limited to the ascertainment and enforcement of his directions." ***Daugherty v. Daugherty***, 784 S.W.2d 650, 653 (Tenn.1990) (citing ***Nat'l Bank of Commerce v. Greenberg***, 195 Tenn. 217, 258 S.W.2d 765 (1953); ***Third Nat'l Bank in Nashville v. Stevens***, 755 S.W.2d 459, 462 (Tenn. Ct. App. 1988)). "The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." ***Fisher v. Malmo***, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983); *see also*

_____

[4] Tennessee Code Annotated 20-16-101 applies to all actions filed on or after July 1, 2011. This case was filed on July 15, 2011.

-4-

> ***Briggs v. Briggs***, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997); ***Presley v. Hanks***, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989). In seeking out the testator's intent, we have several rules of construction to aid us in that effort. However, all rules of construction are merely aids in ascertaining the intent of the testator. ***Sands v. Fly***, 200 Tenn. 414, 292 S.W.2d 706, 710 (1956).
>
> In gleaning the testator's intent, we look to the entire will, including any codicil. ***Stickley v. Carmichael***, 850 S.W.2d 127, 132 (Tenn. 1992); ***Presley***, 782 S.W.2d at 488. The testator's intent is to be determined from the particular words used in the will itself, ***Stickley***, 850 S.W.2d at 132, and not from what it is supposed the testator intended. ***Briggs***, 950 S.W.2d at 712; ***Presley***, 782 S.W.2d at 488; ***Fishe***r, 650 S.W.2d at 46. "Where the will to be construed was drafted by the testator himself who was not versed in the law and without legal assistance the court in arriving at the intention of the testator should construe the language of the will with liberality to effectuate what appears to be the testamentary purpose." ***Davis v. Anthony***, 53 Tenn.App. 495, 384 S.W.2d 60, 62 (1964) (citations omitted). We are also guided by an additional principle of construction; when a decedent undertakes to make a will, we must presume that the decedent intended to die testate, and we must seek to construe the will, where possible, as including all of the testator's property at death. ***Davis***, 384 S.W.2d at 62 (citations omitted).

***In re Estate of Milam***, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005). Because a testator's intent must be determined from the will itself, "[g]enerally, parol or extrinsic evidence may not be used to vary, contradict, or add to unambiguous language used in a will." ***Horadam v. Stewart***, No. M2007-00046-COA-R3-CV, 2008 WL 4491744, at *5 (Tenn. Ct. App. Oct. 6, 2008) (perm. app. denied April 27, 2009) (citing ***Stickley***, 850 S.W.2d at 132). Parol evidence is admissible, however, "to explain a latent ambiguity." ***Horadam***, 2008 WL 4491744, at *5 (citing ***Stickley***, 850 S.W.2d at 132).

At the outset, we note that Mr. Jackson's will was holographic, rather than attorney-prepared. A holographic will is one in which "the signature and all [the will's] material provisions must be in the handwriting of the testator and the testator's handwriting must be proved by two (2) witnesses." Tenn. Code Ann. § 32-1-105. There is no dispute that Mr. Jackson's purported will presents a valid holographic will satisfying the requirements of

Tennessee Code Annotated Section 32-1-105. In construing a holographic will, the fact that the it was prepared by the testator, rather than an attorney, must be considered:

> In construing a will, the skill of the draftsperson must be considered. While the rules of construction applicable are not to be given a different effect because of the fact that the will was prepared by a layperson, a will drawn by a layperson will be construed as a layperson would construe it. Furthermore, wills prepared by experienced attorney-draftspersons must be more strictly construed than instruments created by laypersons, and a greater latitude should be allowed in determining the testator's intention than if the will had been drawn by an experienced person. Thus, holographic wills drawn by unskilled drafters are given a liberal construction.

96 C.J.S. Wills § 895 (footnotes omitted).

The narrow issue in this case is whether either a latent or patent ambiguity exists regarding Mr. Jackson's use of the word "kids." Consequently, we begin with a discussion of the differences between a latent and a patent ambiguity. This Court was recently faced with a similar question regarding the ambiguity of a testamentary disposition in *Hargis v. Fuller*, No. M2003-02691-COA-R3-CV, 2005 WL 292346 (Tenn. Ct. App. 2005). The Court of Appeals explained:

> Our supreme court has provided that a latent ambiguity exists:
>
> > [W]here the equivocality of expression, or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words or phrases made use of.
>
> *Weatherhead v. Sewell*, 28 Tenn. (9 Hum.) 272, 295

(Tenn.1848) (emphasis added); *see also* **Teague**, 114 S.W. at 488. In **Weatherhead**, our supreme court went on to explain those instances when a latent ambiguity will be found to exist, providing:

> The instances most frequently chosen as examples of a latent ambiguity are in relation to the person and the thing: as if there be a devise to a person of the same name, with another without any specification appearing upon the face of the will to designate the real object of the testator's bounty,-this is a latent ambiguity as to the person. If a testator devise his manor of S. to A.B., and has two manors, North S. and South S. this is a latent ambiguity as to the thing. As these ambiguities are generated by facts, so they may be removed by a further investigation of facts or matter extrinsic . . . .

**Weatherhead**, 28 Tenn. (9 Hum.) at 296; *see also* **In re Estate of Burchfiel**, 933 S.W.2d 481, 483 (Tenn. Ct. App. 1996). A latent ambiguity is generally found to exist where the words of a written instrument are plain and intelligible, yet have capability of multiple meanings given extraneous facts. See 96 C.J.S. Wills § 893 (2001).

In turn, a patent ambiguity will be found to exist when the ambiguity is:

> [P]roduced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain.

> \* \* \*

> But if these ambiguities occur in the wording of the will, producing a palpable uncertainty upon its

face, extrinsic evidence cannot remove the difficulty, without putting new words into the mouth of the testator; which in effect would be to make a will for him.

*Weatherhead,* 28 Tenn. (9 Hum.) at 295–96 (emphasis added). A patent ambiguity grows out of the inability, based on the language selected by the testator, in identifying the person or subject matter mentioned therein. *In re Estate of Burchfiel*, 933 S.W.2d at 483; *see also* *Reid's Lessee v. Buford*, 1 Tenn. (1 Overt.) 413 (Tenn.1809); *Mauk v. Perry*, No. E2001-00485-COA-R3-CV, 2001 Tenn.App. LEXIS 787, at *9, 2001 WL 1268494 (Tenn. Ct. App. Oct.22, 2001); 96 C.J.S. Wills § 893 (2001).

*Hargis*, 2005 WL 292346, at *6–*7. Only if a latent ambiguity arises, parol evidence is admissible to illuminate the testator's intentions:

"Ordinarily, parol evidence is inadmissible to add to, vary, or contradict the language used in a will." *Treanor v. Treanor*, 25 Tenn.App. 133, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941); *see also* *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992); *Green v. Lanier*, 61 Tenn.App. 487, 456 S.W.2d 345, 494 (Tenn. Ct. App. 1970). "Any other rule would place it practically within the power of others to make a new will for the testator, so as to meet the convenience and wishes of those who might claim to take under it." 2 Jack W. Robinson, Sr., & Jeff Mobley, Pritchard on the Law of Wills and Administration of Estates Embracing the Law and Practice in Tennessee § 418, at 621–22 (5th ed. 1994); *see also* *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484, 488-89 (Tenn. 1908) ("This rule does not rest upon their immateriality or want of probative value, but upon the impolicy and danger of using such declarations or statements."). It has been well established by our case law that, when construing a will, parol evidence may only be introduced to explain a latent, not a patent, ambiguity in the will. *Holmes v. Roddy*, 176 Tenn. 624, 144 S.W.2d 788, 789 (Tenn. 1940).

However, the rule that parol evidence may only be used

> to explain a latent ambiguity will not forbid a court of this state from referring to facts existing when the testator executed the will. ***Gannaway v. Tarpley***, 41 Tenn. (1 Coldwell) 571, 574 (Tenn. 1860). A court is not precluded from hearing parol testimony "both to place the Court in a knowledge of the condition and circumstances surrounding the testator when he executed his will, and to resolve uncertainties or ambiguities in the will as to the testator's intentions." ***Treanor***, 152 S.W.2d at 1041 (citations omitted); *see also* ***Green***, 456 S.W.2d at 495–96. For instance, the court may entertain parol testimony "as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts." ***Cannon v. Ewin***, 18 Tenn.App. 388, 77 S.W.2d 990, 992 (Tenn. Ct. App. 1934). "Thus facts may be proved to show the state of the testator's property, or such facts as were known to him that may have influenced the disposition of his property in a particular way." ***Gannaway***, 571 Tenn. (1 Coldwell) at 574.

***Hargis***, 2005 WL 292346, at \*5; *but see* ***Allstate Ins. Co. v. Watson***, 195 S.W.3d 609, 61 (Tenn. 2006) (making no distinction between a patent and latent ambiguity: "when a contractual provision is ambiguous, a court is permitted to use parol evidence"); 11 Williston on Contracts § 33:43 (4th ed.) (noting that there "has been a significant decline in the importance of the distinction between latent and patent ambiguities, and many courts now agree that the earlier distinction is largely inappropriate and unnecessary"); Steven W. Feldman, 21 Tennessee Practice Contract Law & Practice § 8:52 (2006) (arguing that "[t]he modern (and more sensible) rule is that extrinsic evidence may clarify either a patent or a latent ambiguity").

Put more succinctly, a patent ambiguity occurs when "the meaning of the language is, on its face, uncertain, doubtful, or obscure." 96 C.J.S. Wills § 918; *see also* Jack W. Robinson, Sr. et al., Pritchard on Wills and Administration of Estates Chapter 7 § 427 (7th ed. 2009) (hereinafter Pritchard on Wills) ("A patent ambiguity . . . is produced by the uncertainty, repugnancy, or deficiency of the language of the will itself, so that no discovery of facts or proof . . . can remove that ambiguity without adding ideas which the words of the will do not convey."). As explained by this Court, a patent ambiguity exists when there is a contradiction on the face of the agreement, such as when "two different prices for the same goods appear in a contract of sale." ***Horadam***, 2008 WL 4491744, at \*6. In such a case, "the legal rules of intestate succession, which are certain, must prevail." Pritchard on Wills § 418. In contrast, a latent ambiguity occurs when "the language is open to more than one

interpretation when applied to the factual situation at issue." 96 C.J.S. Wills § 918; *see also* Pritchard on Wills Chapter 7 § 427 ("A latent ambiguity . . . is one which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than fairly comports with the ordinary use of the words and phrases employed."). In the case of a latent ambiguity, the trial court may properly consider "evidence for such purpose of determining which of several persons or things was intended . . . which, though clear on the face of the will, is rendered uncertain of application by reason of the fact that there are several persons or things answering the same name or description." Pritchard on Wills Chapter 7 § 426 (noting that latent ambiguity "grow[s] out of the difficulty of identifying the person or thing whose name or description corresponds with the terms of the will").

The trial court in this case concluded that Mr. Jackson's will presented neither a patent nor a latent ambiguity. The testamentary disposition in this case provides that the bulk of Mr. Jackson's estate is to go to "Connie Higgs . . . to be divided as she sees fit among kids." At trial, Ms. Perdue argued that the use of the word "kids" is so ambiguous as to create a patent ambiguity. Ms. Higgs, in contrast, argued that the will as a whole manifested an intention that the property should go to her and her offspring, and that consequently, the will unambiguously provides that the term "kids" refers to her own children.

We first consider whether Mr. Jackson's use of the word "kids" creates a patent ambiguity. Ms. Perdue asserts that Mr. Jackson's use of the word "kids" is so ambiguous that it creates a patent ambiguity. Thus, Ms. Perdue argues that this specific devise is void and that the property at issue should pass by intestate succession. *See* Pritchard on Wills Chapter 7 § 418 (noting that when a will is patently ambiguous, the property must pass by intestate succession). After careful consideration, however, we must agree with the trial court that the term "kids" is not patently ambiguous. First, we note that there is a presumption that a testator who endeavors to create a will intended all his property to pass by the terms of that will and not through the application of intestate succession. ***Milam***, 181 S.W.3d at 353. Indeed, the invalidation of a portion of a will due to uncertainty is an extreme remedy and "it is very uncommon to hear the court declare a will, or any of its provisions, wholly inoperative by reason of repugnancy or uncertainty." 3A Horner Probate Prac. & Estates § 61:64. In addition, nothing in the will specifically contradicts this devise. ***See Horadam***, 2008 WL 4491744, at \*6 (noting that contradiction on the face of a contract creates a patent ambiguity). Finally, the term "kids" is not uncertain or repugnant on its face. *See* Pritchard on Wills Chapter 7 § 427. Webster's New Compact Desk Dictionary and Style Guide defines the term "kid" as simply "a child." Webster's New Compact Desk Dictionary and Style Guide 267 (2002). While the term "child" may be considered a term of art, meaning immediate offspring, *see* Pritchard on Wills Chapter 7 § 465, the term "kids" in this case must be construed liberally in favor of the testator's intent. *See* 96 C.J.S. Wills § 895. In

addition, because this will was not drafted by an attorney, the usual rule that "technical words should be given their technical meaning" does not apply. *See Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983) (qualifying that this rule only applies "in any case where a will has been drafted by an attorney").Thus, the term "kids" as used by Mr. Jackson, should be given its usual and ordinary meaning. *See Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (explaining that courts should consider the "plain and ordinary meaning of the written words"). Because the term "kids" clearly means children, the only question is which children Mr. Jackson intended to name in his will. Thus, this is not an example of a patent ambiguity. The trial court's finding that the will did not present a patent ambiguity is, therefore, affirmed.

While we cannot agree that Mr. Jackson's use of the word "kids" creates a patent ambiguity that invalidates this entire clause of the will, we must conclude that the language in the will creates a latent ambiguity as to what "kids" Mr. Jackson was referring. As previously stated, a latent ambiguity exists when uncertainty arises in attempting to administer the estate. *See* Pritchard on Wills Chapter 7 § 426. Although Mr. Jackson is clear that Ms. Higgs is to divide the property among certain "kids," the will is unclear as to what children Mr. Jackson is referring. As argued by Appellees, Mr. Jackson could be referring to Ms. Higgs' own children. Although we conclude that this a reasonable interpretation of the bequest, it is not the only interpretation. Mr. Jackson could also have been referring to other "kids," to whom he wanted to devise his property, including the children of other named parties in the will or even his own children. This Court simply cannot infer, solely from the language of the will, specifically which "kids" Mr. Jackson intended to name in his will. Thus, this devise presents a latent ambiguity that can be cured through the consideration of extrinsic evidence. Indeed, the situation presented in this case is highly analogous to an example provided in Pritchard on Wills illustrating a classic latent ambiguity. According to Pritchard on Wills:

> A testator devised land to "the four boys"; it was held that parol evidence that he had seven sons, three of whom were adults living with him, and the testator's declarations before, at and after the execution of the will, were competent to show that the devise was intended for the four minors.

Pritchard on Wills Chapter 7 § 428 (citing *Bradley v. Rees*, 113 Ill. 327, 1885 WL 8188, (Ill. 1885)). In this case, the specific devise at issue is to "kids," rather than "boys." However, the practical effect of Mr. Jackson's bequest is identical. The will clearly shows Mr. Jackson's intention to devise certain property to some "kids." However, the will does not specifically identify to which "kids" Mr. Jackson was referring. Pritchard on Wills explains the appropriate action by the court in this situation: "In case the will points to the person [or

group] . . . intended, and there is more than one person [or group] . . . of like description, evidence is received to remove the ambiguity and enable the court to reject one or more of the persons . . . to which the description of the will applies, and to determine the person . . . . the testator understood to be signified by the description in the will." Pritchard on Wills Chapter 7 § 426 (citing *Lewis v. Darnell*, 580 S.W.2d 572 (Tenn. App. Ct. 1978) (involving a holographic will establishing a trust for a church; held that extrinsic evidence was admissible to establish which church the testator intended to name in her will)). The trial court's ruling that the will contained no latent ambiguity is, therefore, in error.

Appellees argue, however, that the term "kids" cannot refer to Ms. Perdue because there is no evidence in the record that Mr. Jackson knew that Ms. Perdue was his "kid" prior to his death. Respectfully, evidence, or the lack thereof, of Mr. Jackson's knowledge of Ms. Perdue's existence and relationship to him is exactly the kind of extrinsic evidence that is to be considered by the court only after a finding that the will contains a latent ambiguity. *See Horadam*, 2008 WL 4491744, at *5. Having now determined that a latent ambiguity exists, both Appellees and Ms. Perdue are permitted, on remand, to submit evidence regarding the extent of Mr. Jackson's knowledge of Ms. Perdue,[5] his involvement with Ms. Higgs' children, evidence that Mr. Jackson referred to any children as "kids," or any other evidence relevant to this issue. The trial court, in granting summary judgment, limited its review to only the four corners of Mr. Jackson's will and declined to consider any extrinsic evidence of this kind. Because the will contains a latent ambiguity, this limitation was in error. The trial court's grant of summary judgment in favor of Appellees on the issue of ambiguity is, therefore, reversed.

We are cognizant that Appellees raise additional arguments on appeal regarding Ms. Higgs' authority to distribute the property at issue "as she sees fit." Because of this language and Ms. Higgs' undisputed affidavit that she does not "see fit" to distribute any property to Ms. Perdue, Appellees argue that Ms. Perdue has no standing to seek a declaratory judgment in this case. From our review of the record, however, it appears that the trial court did not consider or rely on these arguments in granting the Motion for Summary Judgment. Instead, the grant of the Motion for Summary Judgment was based solely on the trial court's conclusion that the will was unambiguous. Because the trial court declined to address Ms. Higgs' arguments regarding the "as she sees fit" language contained in the will, we likewise decline to address these arguments on appeal. *See White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814l, at *8 (Tenn. Ct. App. Dec. 18, 2012) ("Because the trial court below apparently did not address these arguments . . . , we also decline to address them

---

[5] At oral argument, counsel for Ms. Perdue stated that there was no evidence *contained in the record* that Mr. Jackson was aware of Ms. Perdue's existence during his lifetime. Accordingly, we believe that the appropriate remedy is to allow the parties to further develop the evidence regarding this issue on remand.

on appeal."). Our holding herein, however, should not be construed as foreclosing these arguments on remand.

The judgment of the Hardeman County Chancery Court is affirmed in part, reversed in part, and this cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this opinion. Costs of this appeal are taxed one-half to Appellant Donna Perdue, and her surety, and one-half to Appellees Estate of Daniel Jackson and Connie Higgs, as Administratrix of the Estate of Daniel Jackson and individually, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE